## THE UNION PACIFIC RAILWAY COMPANY v. WILLIAM FRAY.

1. INSTRUCTIONS, *When Erroneous.* Irrelevant instructions to the jury, though correct as abstract propositions of law, if containing matters which might mislead the jury under the facts of the particular case in which they are given, are erroneous.

2. EMPLOYÉS, *to Obey Instructions.* Where an employer gives instructions generally to his employés, it is the duty of each employé to obey the instructions.

3. VERDICT, *Should be Set Aside, When.* Where a jury render a general verdict and make special findings by answering special questions submitted to them, and some of the special findings are not true, and some of the answers given to the special questions are so evasive and unsatisfactory as to lead to the belief that the party against whom the jury rendered their verdict did not have a fair and impartial trial, the verdict and findings should be set aside and a new trial granted.

### *Error from Wyandotte District Court.*

JULY 30, 1883, plaintiff *Fray* recovered a judgment for $2,000, damages for personal injuries, against the defendant *Railway Company.* It brings the case to this court. The opinion states the facts.

*J. P. Usher,* for plaintiff in error.

*R. P. Clark,* and *I. B. Sharp,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by William Fray against the Union Pacific railway company, for the recovery of damages for the alleged negligence of the defendant in failing to provide and maintain a safe and sufficient derrick, with sufficient ropes and appliances, for the safe handling of stone in building a culvert, whereby the plaintiff was injured. The case was tried before the court and a jury, and judgment was rendered in favor of the plaintiff and against the defendant for $2,000 damages, and costs of suit. The defendant now appeals to this court.

It appears that on November 17, 1882, the plaintiff was in the employment of the defendant, aiding and assisting in building a culvert for the defendant on its line of railroad, in Wyandotte county, Kansas, at a point known as " Deephollow bridge," near a station on the line of the road called "Tiblow." The employment of the plaintiff was in the management and operation of a derrick provided by the defendant for moving heavy stones from freight cars to the places required for the construction of the culvert. While the plaintiff was assisting in the management of said derrick, in moving a large stone, a rope attached to a pulley connected with the derrick broke, whereby the cog wheels, pulleys and other parts of the derrick were broken, and portions thereof were thrown against the plaintiff, striking him on his head and face and elsewhere, whereby injuries were inflicted upon him from which he suffered great loss and pain. It is admitted that all that happened was the result of the breaking of the rope, and that the rope was broken because of negligence on the part of some person in not keeping it properly wet with water so as to prevent its burning from friction. The only question between the parties is, Who was the negligent party

in not keeping the rope properly wet? Was it the plaintiff either alone or in conjunction with the other employés of the defendant, or was it the other employés alone? The plaintiff claims that it was no part of his duty to attend to the rope or to keep it wet, and that the negligence in not keeping it wet was solely the negligence of the other employés; while the defendant claims that it was the duty of the plaintiff, along with one or two other of its employés, to jointly and severally keep a careful watch of the rope and to keep it thoroughly wet so that it would not burn or break from friction. The evidence with respect to whose duty it was to watch the rope and to keep it wet, at the exact time when the accident occurred, is to some extent unsatisfactory and conflicting; and from this unsatisfactory condition of the evidence it is at least doubtful whether exact justice was done by the verdict and judgment rendered in the case.

Many of the instructions of the court to the jury are hardly applicable to the facts of this case; and many of the special findings of the jury are unfair, evasive and unsatisfactory. It may be that the general verdict of the jury is right; but the manner in which the jury answered many of the special questions submitted to them is certainly sufficient to raise great doubts as to the correctness even of their general verdict.

At the present we shall pass over the instructions of the court and shall first consider the special findings of the jury, remarking, however, that we think it is probable that some of the irrelevant instructions are so misleading under the facts of this case that the judgment ought to be reversed upon the instructions alone. We would also state, before giving the special findings of the jury, that Samuel Mallison was the general superintendent of the work in building the culvert; that William Ulrich was the overseer or foreman of the work, under Mallison; and that John Nelson and the plaintiff were laborers handling the derrick, and that they were the only persons present upon the platform and near the derrick when the accident occurred.

The special findings, with our comments thereon, are as follows:

"1. Did Mallison, for the defendant, have the control and direction of the work, the way and manner of its performance, including the derrick and its apparatus, where the plaintiff was injured? *Ans.:* Yes, when present; when absent that duty was delegated to the foreman, Ulrich."

This finding we think is correct.

"2. Was the plaintiff instructed by Mallison, acting under the defendant, that there was danger of the brake-rope burning in letting the rock down into place if the rope was not kept wet? A. Any instruction then given was not given particularly to the plaintiff, but generally, to all concerned."

Mallison did give special instructions to the plaintiff, and also general instructions to all concerned.

"3. Did not Samuel Mallison, at or about the commencement of the work for the defendant, direct the plaintiff to get a bucket of water, with a cup or can, to be used in wetting the brake-rope? A. He ordered plaintiff to bring up a bucket of water and a cup, and then he (Mallison) poured the water on himself."

This finding is literally true, but Mallison poured the water on the brake-rope himself principally for the purpose of showing the plaintiff and the other employés how it should be done.

"4. Did not Samuel Mallison direct the plaintiff to keep a bucket well supplied with water at all times, to wet the brake-rope while lowering rock, and to see to it himself that the rope where it wound around the shaft should be kept wet while rock was being lowered? A. The preponderance of evidence shows that he did not so direct him."

This finding, we think, is literally untrue. The question should have been answered by a simple affirmative.

"5. If the brake-rope had been kept wet where it was wound around the shaft and the friction occurred, would it have burned and broken? A. It would not have burnt, but might have broken."

The answer that the rope might have broken is mere conjecture, for the fact is that the rope burned, and it probably would not have broken if it had not burned.

"6. Did the plaintiff observe and obey the directions of Samuel Mallison in respect to keeping the rope wet? A. The plaintiff obeyed all orders that he received in reference to the water until such directions were annulled by other directions from the foreman, Ulrich."

The answer in effect that Ulrich annulled the directions of Mallison, is not responsive to the question, nor is it true. Ulrich gave to the plaintiff another duty to perform — that of giving signals; but from the preponderance of the evidence, the plaintiff might have attended to both duties — that of giving signals, and also that of keeping the rope wet. Upon this subject, however, the evidence is conflicting.

"7. Was not the plaintiff repeatedly warned by Samuel Mallison and William Ulrich, the foreman upon the works, to be careful to attend and see that the brake-rope was kept wet while rock was being lowered by the derrick to work below? A. The warnings of Mallison and Ulrich were not particularly to the plaintiff, but general to all concerned."

Some of the warnings were given particularly to the plaintiff, and others were given generally to all concerned.

"8. Were not the accident to the plaintiff and the injury sustained by him caused by the burning of the brake-rope while lowering the rock? A. They were caused by the burning and wear of the rope."

This finding we think is correct.

"9. Would the brake-rope have burned if it had been kept wet as directed by Mallison? A. It would not have burnt."

This finding we also think is correct.

"10. Did any one, for the defendant, at any time relieve the plaintiff from observing the directions given by Mallison in respect to keeping the rope wet? If so, name the person and state what was said. A. The evidence shows that the directions of Mallison in reference to the water were not special to plaintiff. Plaintiff was relieved of any duty devolving on him, in consequence of such directions, when Owens was sent up to pour water on the shaft and the plaintiff assigned the duty of giving signals, by Ulrich."

This finding is evasive and untrue. Some of the directions of Mallison were special to the plaintiff, and some of them

were general to all concerned; and while Owens at one or more times was directed to pour water on the rope, and while the plaintiff was directed to give signals, yet the plaintiff was at no time relieved from pouring water on the rope if he could conveniently do so and it was necessary that the same should be done. At the time this accident occurred Owens was not at the derrick or near there, but was down under the bridge mixing mortar, and at that time had nothing to do with the derrick or with wetting the rope.

"11. Was not the plaintiff provided with a bucket for the water which he was to use in wetting the brake-rope and a proper vessel for applying the water to the rope, and was not water flowing near by which the plaintiff could get to wet the rope? A. A bucket, can and water were there, but it was not the plaintiff's duty to use them."

The plaintiff was at one time provided with a bucket, etc., for water, and it was at one time his duty to use them. Whether it was his duty to use them at the particular time when the accident occurred, is the doubtful question. If he was not relieved from such duty by having the additional duty imposed upon him of giving signals, then it was still his duty to use the water in wetting the rope at the time the accident occurred.

"12. Was not the brake-rope new and ample for the purpose of controlling the lowering of the rock by the derrick; and was not the only thing needed to make it absolutely safe the keeping it wet as directed by Mallison? A. It was not. Ulrich was informed before the accident that the brake-rope was in a very defective condition."

Upon this subject the evidence is conflicting; but the finding, or at least the first part of the answer, is probably against the weight of the evidence.

"13. Had not the defendant a large quantity of new rope at the work, from which brake-ropes were to be taken as often as the brake-rope should become worn so as to be unsafe? A. Yes."

This finding is literally true. The foregoing are all the special findings in the case.

We shall now give some of the instructions of the court to the jury, with our comments thereon. They are as follows:

"5. . . . The jury are instructed that in determining the question of negligence as in this case, they should take into consideration the situation and conduct of both parties at the time of the alleged injury as disclosed by the evidence, and if the jury believe from the evidence that the injury complained of was caused by the defendant's agents, super-intendents, overseers, and servants, as charged in the petition, and without any greater want of care and skill on the part of the plaintiff than was reasonably to be expected from a person of ordinary prudence and care in the situation in which he found himself as placed, then the plaintiff is entitled to recover."

Now the defendant has at all times admitted that "the injury complained of was caused by the defendant's agents . . . and servants, as charged in the petition." It has at all times admitted that the injury complained of was caused by the negligence of the plaintiff and Nelson, in not keeping the rope wet; and claims that they were its agents and servants for the particular purpose, among others, of keeping the rope wet.

"7. The jury are instructed that a master employing servants upon any work, particularly a dangerous work, must use due and reasonable diligence that he does not induce them to work under the notion that they are working with proper and safe machinery whilst employing defective and dangerous machinery; and if an employé is so injured on that account, and without any fault of his own, the master is liable in damages."

There was no question in this case with regard to the dangerous character of the work. All parties knew that it was comparatively safe if the rope was kept wet, but that it was very dangerous if the rope was not kept wet; and the defendant did not "induce" the plaintiff and his associates "to work under the notion that they were working with proper and safe machinery whilst employing defective and dangerous machinery." All parties knew the condition of the machinery and in what the danger consisted.

"9. Where business is carried on by machinery, as is used in operating a derrick, as appears in the testimony in this case, it is the duty of the employer, whether corporate or not, to keep the machinery in such condition as from the nature of the business and employment the servant or employé has a right to expect it will be kept, and when the employer fails to do so, through the exercise of ordinary care, he or it is liable for the injuries arising from its neglect."

This, as an abstract proposition, is correct, but as applied to the facts of this case it is misleading and erroneous. Of course the plaintiff had a right to expect that the railroad company, or its servants or agents, would keep the rope in safe condition; but if he and Nelson were the special servants and agents of the railroad company for that purpose, he can hardly expect to recover for injuries resulting from his own negligence in not keeping the rope in safe condition. He was really in a situation that he could have known at all times the condition of the rope.

"10. The jury are instructed that derricks, with their pulleys, ropes and other appliances, used in raising or lowering heavy rocks, are liable to wear out, to break, to become defective and dangerous; and any employer, whether corporate or not, employing such agencies, is charged with notice of this fact, and consequently is bound to exercise a degree of watchfulness over them, commensurate with the nature of the business in which they are employed, and the consequences incident to the neglect. Therefore, if an employer, whether corporate or not, fails to make frequent examinations of its machinery and appliances, or fails to take other measures or precautions necessary to prevent such appliances and machinery from becoming defective and dangerous from natural causes, and if from such defects, which might have been known by the use of ordinary care and diligence, an employé suffers injury without his fault, negligence may be predicated thereon, as such omission would be regarded as negligence."

Of course a railroad company is required to exercise diligence in keeping its machinery in good order; but where it attempts to do the same through an agent or servant, it is not liable to that agent or servant for injuries resulting from

defects in the machinery which that agent or servant could and ought to have remedied.

"11. The jury are instructed that the law will not allow the machinery of the defendant in constant use to be out of repair for want of ordinary care and skill in its management, and it is a question of fact for the jury to find from the evidence whether the defendant might have known by the exercise of ordinary and reasonable care and diligence that the machinery was unsafe and dangerous."

This instruction is clearly misleading. It is a virtual instruction to the jury to find for the plaintiff, for it wholly ignores the alleged obligation of the plaintiff to keep the rope wet, and virtually says that if the defendant knew or "might have known by the exercise of ordinary and reasonable care and diligence that the machinery was unsafe and dangerous," the plaintiff might recover. Now the defendant did know that the machinery would be unsafe and dangerous if the rope was not kept wet, and it was bound through the plaintiff, or some other employé, to keep the rope wet; but it did not do so. This instruction is erroneous in wholly ignoring the real and material question involved in the case.

"12. The jury are instructed that it is the duty of defendant to keep a sufficient force at hand, and of capacity sufficient to discover obvious defects in its machinery, and apply the remedy. Negligence to keep defendant's machinery in a reasonably safe condition, if injury or loss occur thereby, the defendant will be liable; and it ought to be so liable, because it is required to exercise reasonable and proper care to see that its machinery is in proper condition, and to guard against defects that may arise from use or other natural causes. From this responsibility defendant cannot be relieved except by showing that the defect was sudden and unforeseen, or that it could not be discovered or remedied by ordinary care or foresight."

This instruction is about as bad as instruction No. 11. It virtually instructs the jury to find for the plaintiff, for it says that the defendant could not be relieved from responsibility "except by showing that the defect was sudden and unforeseen,

or that it could not be discovered or remedied by ordinary care or foresight." Now the defendant admits that the defect was such as could have been discovered, foreseen and remedied by ordinary care and foresight; and it claims that it was the duty of the plaintiff, under the instructions from the superintendent and foreman of the work, to discover, foresee and remedy such defect. Indeed, the defendant claims that all parties at all times knew of the danger, and that it was the plaintiff's duty to remedy the same.

"13. The jury are instructed that if defendant did not appoint a foreman or other person, whose business it was to examine, supply, repair or remedy defective machinery in actual use, it is guilty of negligence in refusing to do something that a reasonable employer would do. If it does appoint a foreman or other person to represent defendant in this regard, and such foreman or other person omits his duty when he has knowledge of defects existing in machinery in use, or fails to ascertain or remedy defects he ought to have known or might have known by the exercise of reasonable and proper care on his part by examining and inspecting the same, his negligence will be the negligence of the defendant."

Did the court by this instruction mean that the defendant should have appointed some other person than the plaintiff to examine the machinery and keep it in proper condition? The jury may have so understood the court; and if so, the instruction was misleading; for the plaintiff was amply competent to take care of the rope and see that it was wet. Or if the court did not mean to say that the defendant should have appointed some other person than the plaintiff, then did the court mean to say that "his [the plaintiff's] negligence will be the negligence of the defendant?"

"15. Negligence as applied to the facts in this case, is the failure to observe that care and circumspection which ordinarily prudent men observe considering the circumstances surrounding the performance of the given act; in other words, it is a failure to observe that care in view of the consequences that may result from negligence fairly commensurate with the perils or dangers likely to be encountered."

This instruction is subject to substantially the same criti-

cism as several of the others. The defendant admitted that the accident was caused by negligence, but claims that the negligence was that of the plaintiff, and not that of the defendant.

The judgment in this case must be reversed. Many of the instructions, as before stated, are irrelevant and inapplicable under the facts of this case; and while they may be correct as abstract propositions of law, or as applied to the facts of some other case, yet under the facts of this case they are misleading and erroneous. And it is a general principle that irrelevant instructions, though correct as abstract propositions of law, if containing matters which may mislead the jury under the facts of the particular case in which they are given, are erroneous. The special findings of the jury show that they were misled, from some cause, in several particulars. From some of the special findings it would seem that the jury believed that if the instructions of the superintendent and foreman to the employés of the company to keep the rope wet were general to all concerned, including the plaintiff, and not special and particular to him, he was not bound to obey such instructions or to give any attention to them. This was certainly erroneous. The plaintiff had no more right to disregard instructions given to him along with others, than though they had been given to him specially. We think the judgment in this case should be reversed because of the manner in which the jury answered the special questions submitted to them. As before stated, some of their answers are untrue, some of them are evasive, and many of them are so unsatisfactory as to lead to the belief that the defendant did not have a fair and impartial trial; and where a jury render a general verdict and make special findings by answering special questions submitted to them, and some of the special findings are not true, and some of the answers given to the special questions are so evasive and unsatisfactory as to lead to the belief that the party against whom the jury rendered their verdict did not

have a fair and impartial trial, the verdict and findings should be set aside, and a new trial granted. Judgment reversed.

All the Justices concurring.