# THE UNION PACIFIC RAILWAY COMPANY V. WILLIAM FRAY.

1. RAILROAD EMPLOYÉ— *Two Duties Imposed; Question of Fact.* Where a duty is imposed by a railroad company upon one of its employés, and afterward another duty is assigned to him by his employer, without expressly relieving him from the performance of the first duty, the question whether the assignment of this second duty relieves him from the performance of the first duty, is a question of fact to be submitted to the jury upon the evidence, and is not a question of law.

2. CONVERSATION; *Incompetent Evidence.* A conversation between two employés of a railroad company concerning a past transaction, is incompetent evidence as against the railroad company to prove such transaction.

3. ———— *Erroneous Instruction.* In an action brought by an employé against a railroad company for injuries resulting from alleged negligence, evidence was introduced tending to show that a duty was imposed by the railroad company upon such employé, and afterward another duty was assigned to him by his employer, without expressly relieving him from the performance of the first duty, and he could not act in the performance of both duties at the same time, and evidence was also introduced tending to show that he might have performed both duties by attending to one and then to the other alternately, and that he failed in the performance of one of such duties, and that by reason of such failure the injury for which he sued the railroad company resulted. *Held*, That an instruction by the court to the jury in substance that, if at the time of the injury the plaintiff was in the discharge of the duty which he in fact performed, he might recover, notwithstanding the fact that he failed to perform the other duty, is misleading and erroneous.

4. ———— *Erroneous Instruction.* Where special questions of fact are submitted to the jury for their answers, it is erroneous for the court to instruct the jury that "in case no evidence can be found bearing upon the question required to be answered, the jury will say 'Don't know,' or 'Cannot answer from the evidence.'"

5. QUESTIONS, *Not Answered; Error.* And in such a case, where the jury answer eight of such questions by simply saying "Don't know," and the questions are material, and there was some evidence introduced on the trial applicable to all of them, and the court refused to require the jury to answer these questions in a proper manner, *held*, error.

*Error from Wyandotte District Court.*

At the July Term, 1884, plaintiff *Fray* recovered against the defendant *Railway Company* a judgment for $4,000, damages for personal injuries. The defendant brings the case to this court. The material facts are stated in the opinion, and in *U. P. Rly. Co. v. Fray*, 31 Kas. 739, *et seq.*

*J. P. Usher*, for plaintiff in error.

*R. B. Clark*, and *Nathan Cree*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This case has once before been in this court. (*U. P. Rly. Co. v. Fray*, 31 Kas. 739; same case, 15 Am. & Eng. Rld. Cases, 158.) After the former decision, the case was returned to the district court, where it was again tried before the court and a jury, and the jury found a general verdict in favor of Fray, who was the plaintiff below, and against the railroad company, which was the defendant below, and assessed the damages at $4,000, and also made several special findings of fact; and upon this general verdict and these special findings of fact the district court rendered judgment in favor of Fray and against the railroad company for the amount of the general verdict and costs, and the railroad company, as plaintiff in error, again brings the case to this court and again seeks a reversal of the judgment of the court below.

The evidence introduced on the second trial is very similar to that introduced on the first trial. There are some differences, however, which we may mention as we proceed with this opinion.

The foundation of the plaintiff's action is the alleged negligence of the defendant railroad company in failing to provide and maintain a safe and sufficient derrick, with sufficient ropes and other appliances, for the safe handling of stone in building a culvert for the defendant on its line of railroad in Wyandotte county, Kansas, at a point known as "Deep Hollow

Bridge," near a station on the line of the company's railroad, called "Tiblow." Samuel Mallison was the railroad company's general superintendent in building the culvert, William Ulrich was the overseer or foreman of the work under Mallison, and John Nelson and the plaintiff Fray were laborers, handling the derrick and performing such other duties as might be assigned to them by either Mallison or Ulrich. This derrick was used in removing stone from a platform near the derrick to a place about forty feet below, where the stone was used in constructing the culvert. In operating this derrick, a rope, usually called a brake-rope, was used, a portion of which was wound around a pinion-shaft. This pinion-shaft, from friction produced in some manner not shown by the record, would become heated whenever it was used unless water at such times was constantly poured upon it, and when allowed to become heated it would burn or char the brake-rope so as to render it frail, weak, and unsafe. If, however, water was poured upon the brake-rope and pinion-shaft while the derrick was being operated, and if occasionally, when the brake-rope became worn, a new one was put in its place, there was no danger in operating the derrick. In the present case there seems to have been negligence in not keeping the brake-rope and pinion-shaft wet, and in allowing the brake-rope to become burnt or charred, and partially worn before removal, so as to render it unsafe, whereby it broke and caused portions of the derrick to break, and thereby caused the injuries of which the plaintiff complains, and for which he seeks damages in this action.

It seems to be admitted by both parties that there was negligence in this respect, but the parties differ as to who was guilty of the negligence. The plaintiff claims that it was principally, if not entirely, the negligence of Ulrich, while the defendant claims that it was wholly the negligence of Fray and Nelson, and principally the negligence of Fray himself. In all probability Ulrich, Fray and Nelson were about equally guilty of the negligence that caused the injuries complained of. The plaintiff claims that the defendant is liable for the

negligence of Nelson as well as of Ulrich, as Nelson was one of the defendants' servants; but the defendant claims that the plaintiff is liable for the negligence of Nelson for the following reasons: The railroad company claims that the duty of keeping the brake-rope and pinion-shaft wet, and of seeing that the brake-rope was at all times safe and in proper condition, was imposed particularly upon the plaintiff and Nelson jointly and severally; that they worked together at and near the derrick, and that it was their duty, jointly as well as severally, to watch the derrick, the brake-rope and the pinion-shaft, and to see that at all times the brake-rope was safe and in good condition. On the second trial an effort was made by the plaintiff to show that the brake-rope became unsafe from wear alone, and that it did not burn or char, but we think the effort was a failure. There was also an effort made on the part of the plaintiff to show that although the duty of keeping the brake-rope and pinion-shaft wet was at one time imposed upon the plaintiff, or the plaintiff and Nelson, by Mallison or Ulrich, or both, yet that the plaintiff was afterward relieved from such duty and assigned to another by Ulrich. Whether this was so, or not, is probably one of the principal questions, if not the main question, in the case; and this question under the evidence is one of fact, and not one of law. On the part of the defendant, an attempt was made to show that the duty of keeping the brake-rope and pinion-shaft wet was imposed upon Fray and Nelson by Mallison, and that Ulrich not only did not attempt to relieve them from such duty, but that he had no power to do so if he had so attempted. As Ulrich, however, was the foreman of the work, and as Fray and Nelson worked under him, we would think that the attempt to show that Fray and Nelson had the right to work independently of him or to violate his orders was a failure. As between Fray and the railroad company, we would think from the evidence that Ulrich had the power to assign Fray and Nelson to other and different duties, and to relieve them from the duty of keeping the brake-rope and

1. Railroad employe, two duties imposed; question of fact.

pinion-shaft wet. The only question then, in this regard is, whether he did in fact relieve Fray from the duty of keeping the brake-rope and pinion-shaft wet. He did not expressly so relieve him, but whether he did so impliedly is the question to be considered. This, as before stated, we think is the main question involved in the case, and under the evidence is purely a question of fact and not one of law, and therefore we do not think that we can decide it as a question of law. Really the only question which we can determine is, whether this question and the other questions of fact involved in the case were fairly submitted to the jury and fairly tried by them. The defendant claims that they were not. It claims that improper evidence was admitted; that improper instructions were given; that proper instructions were refused; that the jury refused to answer proper questions of fact which had previously been submitted to them, and that the court below refused to require the jury to answer such questions. Whether the foregoing errors were in fact committed or not, we shall now proceed to consider.

The first claim of error is, that the district court erred in permitting testimony of a conversation had on the next day after the accident, between John Nelson and Samuel Mallison, to be introduced in evidence. This conversation was concerning matters which occurred on the day of the accident, and which tended to prove negligence on the part of Ulrich. It was concerning past events, and although it occurred between *Conversation; incompetent evidence.* persons in the employment of the defendant, still it was pure and simple hearsay testimony, and not admissible under any rule of law. The authorities cited by the defendant in error are not applicable. It is possible, however, under the other facts and circumstances of the case, that this error is immaterial; but whether it is or not we need not now determine.

It is next claimed that the court below erred in refusing to give certain instructions and in giving certain other instructions. We think the court below did so err. We shall now assume that Ulrich and Nelson were guilty of negligence for

which the railway company is responsible, and that their negligence was so clearly and conclusively shown by the evidence that any errors of the court with respect thereto are wholly immaterial. But still, the principal question presented to the court below was, whether the plaintiff was guilty of contributory negligence or not, which question was one of fact for the jury; and the principal question now to be determined by this court is, whether that question was fairly submitted to the jury or not, for their determination. We hardly think it was. From the evidence introduced, the duty of keeping the brake-rope wet was at one time imposed upon the plaintiff, among others; and also from the evidence it is probable that if the brake-rope had been kept wet it would not have broken as it did, and the accident would not have occurred. It is also in evidence that the further duty of giving and receiving signals was also imposed upon the plaintiff, and in giving and receiving such signals it was necessary for the plaintiff to stand on the edge of the platform, a few feet from the derrick, but so far away from the derrick that he could not while there pour water on the brake-rope. Neither could he give nor receive signals while pouring water on the brake-rope. In other words, he could not perform both duties at the same time. This we think has at all times been conceded by the parties, and at no time has any question with reference thereto been raised by either party. This accident occurred while the plaintiff was on the edge of the platform for the purpose of giving and receiving signals.

But although the defendant concedes that both duties could not have been performed precisely at the same time, yet it claims that the plaintiff could have easily performed both duties by first attending to one, and then to the other, alternately; that is, he could have first wet the brake-rope, and then attended to the other duty, and then wet the brake-rope again, and so on, without any difficulty. The defendant claims that even after the employés had commenced to move a stone for the purpose of letting it down to the place where it was to be put in the culvert, the plaintiff could have stepped to the

45 — 35 KAS.

derrick and poured water on the brake-rope, and then have stepped back to the edge of the platform, to receive and give signals; that the performance of one of these duties would not at all have interfered with the performance of the other; and considerable evidence to this effect was introduced on the trial; but it it does not appear that the court below charged the jury sufficiently with respect to this aspect of the case. The court refused all the instructions asked for by the defendant upon this subject, and indeed upon every other subject, and gave only its own instructions. Among these instructions given are the following:

"20. . . . But if the jury further find and believe from the evidence that after said order [to keep the brake-rope wet] was given by said Mallison to said plaintiff, that one Ulrich became foreman, with authority to superintend and direct work for defendant, and that said Ulrich had assigned other duties to the plaintiff, and at the time of the alleged injury occasioned by the breaking of the said brake-rope, and prior to and at the time of said alleged injury, the plaintiff, in obedience to orders of Ulrich, was in the discharge of other duties than wetting said rope, he was bound to discharge such other duties, (if the jury find he was assigned to other duties); and if it appears the plaintiff received the alleged injuries in the discharge of such other duties under the direction of the foreman, then the defendant would properly be charged with negligence."

"24. If the jury believe from the evidence that Samuel Mallison was superintendent of the work, and William Ulrich was overseer or foreman of the work, and that John Nelson and the plaintiff were laborers handling the derrick when the accident occurred, and if the jury further find and believe that William Ulrich, overseer, prior to the time of said accident, assigned and directed plaintiff the work and duty of giving signals to other workmen while lowering rock from the derrick platform into the pit below, and if the jury further find that at the time the accident occurred the plaintiff, in. obedience to previous directions given by the overseer, was at his proper place ready and waiting to give the required signals, or in the act of giving such signals, then plaintiff was in the line of his duty under the orders of the overseer of the work at the time of the accident."

"28. If the jury find and believe from the evidence that plaintiff was charged by both Mallison and Ulrich with keep-. ing the brake-rope wet while lowering rocks, and also charged by Ulrich to give signals to the workmen in lowering the rocks, and if the jury further find and believe that neither of these orders was revoked when the accident happened, then the jury will consider whether the plaintiff at the time of the accident was occupied in giving signals or pouring water on the rope, and they will further find and consider whether he could perform both duties at the same time.    And if the jury find that both duties could not be performed at one and the same time, and if they believe that both could not be performed at the same time, then the jury will find from the evidence to which of these duties he was assigned at and immediately prior to the accident that caused the injury, and if the jury find and believe that at that time he was assigned to and directed to pour water on the rope, and the rope broke, and he was injured on account of his failure to keep the rope wet, then and in that case the plaintiff is not entitled to recover; *but if the jury find and believe that at the time of the accident the plaintiff was engaged in giving signals or other duties pertaining to the giving of such signals, and in the line of his duty pertaining to such orders, then he could not be charged with negligence in failing to pour water on the brake-rope in lowering the rock.*"

Now these instructions are in substance that if the plaintiff had two duties to perform, one in pouring water on the brake-rope at the derrick and the other in giving signals at the edge of the platform, and if he could not perform both of these duties at the same time—and he certainly could not— and if at the time of the accident he was properly at the edge of the platform for the purpose of giving signals—and probably he was properly at that place at that time—then that he performed his whole duty, and he could not be charged with negligence, although he may have had ample time to have poured water on the brake-rope immediately before he took his position on the edge of the platform.    In other words, that if he was performing his duty at the edge of the platform at the very time of the accident—and perhaps the defendant will admit that he was—then that his prior negligence immediately preceding the accident in not

3. Erroneous
instruction.

pouring water on the brake-rope, if he was guilty of such negligence, could not affect his right to recover. This cannot be the law. If the rope broke because of his negligence in not pouring water on it a few moments before the accident occurred, it could not make any difference that he was properly performing another duty at the precise time of the accident. If it was the duty of the plaintiff to pour water on the brake-rope prior to his taking position on the edge of the platform, and if the rope broke because he failed to perform this duty, then he cannot recover. The foregoing instructions probably misled the jury.

It is also claimed that the court below erred in giving the following instruction to the jury with regard to the special questions of fact submitted to them for their answers, to wit: "In case no evidence can be found bearing upon the question required to be answered, the jury will say: 'Don't know,' or 'Cannot answer from the evidence.'"

4. Erroneous instruction. We think the court below erred as is claimed. (*K. P. Rly. v. Peavey*, 34 Kas. 474, 486.)

It is also claimed that the court below erred in refusing to require the jury to answer in an intelligent manner the following special questions submitted to them at the request of the defendant. The following are the questions, with the answers of the jury:

"*Ques. 2:* Was the plaintiff instructed by Mallison, acting for the defendant, that there was danger of the brake-rope burning, in letting the rock down into place, if the rope was not kept wet? *Ans.:* Don't know."

"Q. 5. If the brake-rope had been kept wet where it wound around the shaft, and the friction occurred, would it have burned? A. Don't know.

"Q. 6. Did the plaintiff observe and obey the directions of Samuel Mallison in respect to keeping the rope wet? A. Don't know.

"Q. 7. Was not the plaintiff repeatedly warned by Samuel Mallison and William Ulrich, the foreman upon the work, to be careful to attend and see that the brake-rope was kept wet while rock was being lowered by the derrick to the work below? A. Don't know."

"Q. 9. Would the brake-rope have burned if it had been kept wet as directed by Mallison?  A. Don't know.

"Q. 10. Did anyone for the defendant direct the plaintiff not to observe the directions given him by Mallison in respect to keeping the rope wet?  If so, name the person, and state what was said.  A. Don't know.

"Q. 11. Was not the plaintiff provided with a bucket for the water which he was to use in wetting the brake-rope, and a proper vessel for applying water to the rope? and was not water flowing near by, which the plaintiff could get to wet the rope?  A. Don't know, as to the first paragraph; yes, as to the second.

"Q. 12. Was not the brake-rope put on new the day of the accident or the day before, and was it not of size and strength sufficient for the purpose of controlling the lowering of the rock by the derrick, and was not the only thing needed to make it safe to keep it wet as directed by Mallison?  A. Don't know."

We think the court below erred in refusing to require the jury to answer these questions in a proper manner.  The questions are material, and there was some evidence introduced applicable to every one of them.

5. Questions, not answered; error.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

All the Justices concurring.