All the Justices concurring.

---

THE ST. LOUIS, FORT SCOTT & WICHITA RAILROAD COMPANY, *et al.*, V. MAGGIE WILLIS, *as Administratrix of the estate of Charles R. Willis, deceased.*

1. RAILROAD COMPANY — *Contract with Construction Company — Injury — Liability — Error.* Where a railroad company contracts with a construction company to survey and locate its line, procure its right-of-way, build its road-bed, tracks, bridges, side tracks, etc., and equip the same with engines and cars, in accordance with certain specifications, such provisions of the construction contract make the construction company an independent contractor, in the sense that the railroad company is not liable for injuries occasioned by a defective track, or the negligence of employés on a train laden with construction materials, on a part of the line constructed by the contracting

company and remaining under its control, and not inspected and accepted or operated by the railroad company. It is error to render a judgment against the railroad company for such injury. (The case of *K. C. Rly. Co. v. Fitzsimmons,* 18 Kas. 34, cited, and approved.)

2. JURY — *Evasive Answers — Judgment, Reversed.* When a jury return evasive and unsatisfactory answers to certain special questions submitted to them, and to others make answers that are not supported by any evidence, and persist in such a course, after objection is made to such answers by counsel, and after admonition by the court, it is a good and sufficient cause for a reversal of the case and the granting of a new trial. (*U. P. Rly. Co. v. Fray,* 31 Kas. 739, cited, and followed.)

*Error from Sedgwick District Court.*

ACTION brought by *Maggie Willis,* as administratrix of the estate of Charles R. Willis, deceased, against *The St. Louis, Fort Scott & Wichita Railroad Co.,* and *The Ellsworth, McPherson, Newton & Southeastern Railway Co.,* to recover damages for the death of the intestate, Charles R. Willis, her husband, caused, as she alleged, by the negligence of the defendant railroad companies.

The material parts of her petition are as follows:

"That said Charles R. Willis, deceased, was, on the 28th day of June, 1885, in the employment of both defendants, at their request, as brakeman and laborer for defendants, and that on said day, while discharging his duties at defendants' request as such brakeman and laborer, he was riding on one of the cars belonging to the defendants, going over the Ellsworth, McPherson, Newton & Southeastern Railroad from Newton, Harvey county, Kansas, to El Dorado, Butler county, Kansas, said car being attached to a locomotive and other cars, all belonging to defendants, and under their control and under the management of their servants, agents and employés; that the car on which said Willis was riding was old, worn, and defective, and the other cars and the locomotive attached thereto were also unsound, defective, and unfit for use as rolling stock upon the road, and the track itself was uncompleted, and in bad condition, and it was unsafe and dangerous to pass cars thereover — all of which defendants and their agents knew, but of which said Willis was ignorant. Nevertheless, the defendants negligently, wrongfully and knowingly suffered and caused all of said cars and the said locomotive and the said track to be used in passing said cars and locomotive to and fro over said

track; and while Charles R. Willis, deceased, was riding on the car above mentioned, in Harvey county, passing from Newton to El Dorado, as aforesaid, engaged in the discharge of his duties as brakeman, as aforesaid, at the request of said defendants, and while he was exercising due care and caution, the said car and the other cars and locomotive thereto attached and propelling the same, were by the reason of the defective, unsound and unsafe condition of all said cars, locomotive and track, and the negligence of defendants and their employés — other than said Willis — in handling, controlling and operating said cars and locomotive over said track in an unskillful and careless manner, thrown from the track with great violence and a sudden shock, whereby, and by reason whereof, the said Willis, without any fault or neglect of his own, was unavoidably and forcibly thrown to the ground from the said car on which he was riding, and falling on the track or near there, in front of the wheels of the cars, the said wheels ran upon and across him, crushing and lacerating his limbs, and fatally wounding him, so that after lingering in agony and pain for about one hour, he died from the effects thereof."

Each of the defendant railroad companies filed a separate answer, pleading a general denial, and alleging that the injury was the result of and was directly caused by the negligence and carelessness of the said Charles R. Willis. Trial at the February Term, 1886, and verdict and judgment for the plaintiff for $5,000. Special questions were submitted to the jury, at the request of the plaintiffs in error, and answered as follows:

"1. Was there at this time and prior to this accident, a corporation known as the Ellsworth, McPherson, Newton & Southeastern Railroad Company? A. The defendants so claim.

"2. Was there a corporation known at this time as the West Kansas Construction Company? A. According to the evidence, yes.

"3. Was there any contract between the said Ellsworth, McPherson, Newton & Southeastern Railway Company and the West Kansas Construction Company, for the construction of the road from the city of El Dorado to the city of Newton, and was that contract in writing, and was said road built under said contract? A. No, the contract was made with Mr. ——, of New York.

"4. Is it not a fact that the St. Louis, Fort Scott & Wichita

railroad company was not a party to said contract? A. Indirectly, it was.

"5. Is it not a fact that the St. Louis, Fort Scott & Wichita railroad company did not construct said railway? A. In some respects they did.

"6. Is it not a fact that D. P. Jones was president of the West Kansas Construction Company? A. The charter so states.

"7. Is it not a fact that John Gaffney was the boss track-layer for the West Kansas Construction Company in the construction of said road from the city of El Dorado to the city of Newton? A. Evidence shows that he was in charge of the work in question.

"8. Is it not a fact that N. S. Woods was the engineer of said road from El Dorado to Newton for said West Kansas Construction Company? A. Evidence tends to show that he was engaged a portion of his time in the construction of the road from El Dorado to Newton.

"9. Is it not a fact that the said D. P. Jones had charge of the construction of said road, under said contract in behalf of the West Kansas Construction Company? A. Evidence in conflict; no evidence to show personal supervision.

"10. Is it not a fact that the said N. S. Woods was subject to his orders and control? A. Do not believe that he depended or looked to him for orders, there being no acceptable or sufficient testimony of that fact.

"11. Is it not a fact that the said John Gaffney was subject to the immediate orders and control of said N. S. Woods and the said D. P. Jones? A. We believe that he was subject to the orders of N. S. Woods.

"12. Is it not fact that John Gaffney had the immediate charge of the supply train, including the car and engine connected therewith? A. We believe from the evidence he had, so far as to informing them what supplies he wanted.

"13. Is it not a fact that the St. Louis, Fort Scott & Wichita Railroad did not direct or control the construction of said road, or the men employed in and about the construction thereof? A. We do not so understand it.

"14. Is it not a fact that the deceased, C. R. Willis, had been discharged or suspended from the employment of the St. Louis, Fort Scott & Wichita Railroad, for some time before he went to work on the construction of the Ellsworth, McPherson, Newton & Southeastern Railway? A. Not discharged.

"15. Is it not true that he worked on the construction of said road after the time he went there until the time of his death? A. Evidence shows that he was at work on the train that hauled supplies for said road.

"16. Is it not true that the engine and car with which the said Willis was connected at the time of his death, had been before that for some time leased or rented or hired to the West Kansas Construction Company, for which it was to pay the said railroad company a compensation therefor? A. There was no evidence showing that there was any compensation paid for the use of said engine and said car.

"17. Is it not a fact that the time and accounts of the said messenger and said Willis, deceased, and other brakemen, were kept separately and marked on the rolls of the West Kansas Construction Company? A. The accounts and time were kept on the rolls of the St. Louis, Fort Scott & Wichita Railroad Company, but can't say that they were kept separately.

"18. If you find the said Willis, deceased, has not been paid, is it not a fact that the West Kansas Construction Company owes him for his services? A. We do not so find it.

"19. Is it not a fact that the Ellsworth, McPherson, Newton & Southeastern Railway did not employ anybody or pay anybody in the construction of its road, excepting the West Kansas Construction Company? A. Do not know.

"20. Is it not a fact that the Ellsworth, McPherson, Newton & Southeastern Railway Company did not exercise any control or direction whatever over the engine or cars or men employed in the construction of its railway, or in the mode or manner of the construction thereof? A. Evidence incomplete.

"21. Is it not a fact that the only action by the Ellsworth, McPherson, Newton & Southeastern Railway, was by and through its president, J. W. Miller, in the accepting of the road, for the purpose of determining if it was built in accordance with the contract? A. No evidence to show that.

"22. Is it not true that the Ellsworth, McPherson, Newton & Southeastern Railway Company did not accept the said road or any part thereof, until after the 1st day of July, 1885, and until after the same was built and completed from the city of El Dorado to the city of Newton? A. Evidence does not show when officially accepted.

"23. Who were the principal persons in charge of the construction and in the control and the operation of the Ellsworth, McPherson, Newton & Southeastern Railway, from the

beginning of its construction to the time of its completion
and acceptance, July 1, 1885?    A. J. W. Miller, N. S. Woods
and John Gaffney, according to the evidence.

"24. When, if at all, did the Ellsworth, McPherson, New-
ton & Southeastern Railway Company become consolidated
with the St. Louis, Fort Scott & Wichita Railway, with refer-
ence to the time of the accident in question — was it before, or
after?    A. No date is given in evidence.

"25. What do you find was the cause of the car jumping
the track at the time Willis was killed?    A. Train running
at too great a speed for the condition of the road and the
make-up of the train.

"26. What position was Willis occupying at the time he
was thrown from the box?    A. At the end of the car near
the brake.

"27. Is it not a fact that the deceased, Willis, knew the
condition of the track over which the train was passing at the
time he was killed?    A. We have no means of knowing as to
Willis's personal knowledge as to the actual condition of the
track at that point.

"28. Is it not a fact that he, having been running back and
forth over the track for a week or ten days, had a reasonable
opportunity for knowing the condition of the track?    A. No,
as the last train over might have misplaced the track.

"29. Is it not true that it was his duty, as well as that of
the other brakeman, in the position in which he was located,
and the direction in which the train was running, to signal the
engineer if he was going too fast, and also to apply the brakes
when the engineer had ceased to use steam, if the train were
going too fast down grade?    A. Yes, it is true, and we under-
stood from the evidence that he did so signal and apply the
brakes.

"30. Is it not true that he had a reasonable opportunity to
know how the car upon which he was riding and upon which
he had been riding for a week or ten days, was constructed?
A. Although his position as brakeman gave him a reasonable
opportunity to notice the construction of the car, yet his sup-
posed want of knowledge in that branch of the service would
naturally prevent his discovering its defects.

"31. If you believe that the condition of the track caused
the car to leave it, state wherein the track was defective?    A.
We do so believe, and herewith state from the evidence ad-
duced, we find that the rails were laid on ties that were about
four feet apart, and the spikes were driven in only every alter-

nate tie, making about eight feet between spiked ties; that sufficient surfacing was not done to hold the ties in place, consequently, in connection with the high rate of speed, make-up of the train; the condition of the track, these united causes made the car leave the track."

*J. H. Richards*, for plaintiffs in error; *Harris, Harris & Vermilion*, of counsel.

*Houston & Bentley*, for defendant in error; *F. P. Martin*, of counsel.

Opinion by SIMPSON, C.: Assuming for the present that all the other material facts essential to a recovery in this action have been established by proper proof, it remains to determine whether either of the railroad companies that are plaintiffs in error here is liable in damages for the death of Charles R. Willis. Their liability depends upon the law as applied to the special findings of the jury, and such other facts as are established in the record, about which there are no special findings, and not much controversey. Those material to the inquiry are as follows:

The Ellsworth, McPherson, Newton & Southeastern Railway Company was organized to construct a line of railway from El Dorado, in Butler county, to Newton, and, "being desirous of immediately constructing a part of its line from El Dorado to Newton on the 31st day of March, 1885, it entered into a contract with a corporation known as the West Kansas Construction Company, to construct and equip that part of its line." The construction company was to survey and locate the line, procure the right-of-way, build the road-bed, tracks, bridges, side-tracks, etc., and equip the same with engines and cars, in accordance with certain specifications. By the terms of the contract, the railway company, through its officers, was to inspect and accept provisionally the road as completed in sections of five miles or more, and as such sections were turned over to and operated by the railway company, it was to haul the supplies for the construction company at specified rates. These provisions were not strictly

observed, and the construction company remained in charge and control of the whole line constructed by it until the road reached Newton, after the death of the deceased, when on or about the 1st day of July, 1885, the control of the road passed into the hands of the railroad company. The death of Willis occurred on the 28th day of June, 1885. The Ellsworth company also agreed that the construction company should have the privilege of running its trains over the line inspected, and of receiving and carrying forward construction material, or for other necessary purposes, but trains should be run under police rules and regulations prescribed by the Ellsworth company, and under its control as to time and speed of movement; and the construction company was to be liable for all damages to stock, or to other property or persons which it might cause. These are all the provisions of the contract between the Ellsworth company and the construction company that seem to have any bearing upon the question of liability of either company for the death of Willis. The special findings of the jury having reference to such liability are all of a negative character, such as "they do not know," or answers of a similar import, which are evasive in their tone and not frank responses to direct questions. It remains for us to determine the liability of these two companies, or either of them, on the terms and conditions of the written contract for construction. It is a familiar principle of law that the Ellsworth company could not be held responsible for the negligent act of the construction company unless it had assumed such responsibility by contract. The evidence shows without question that each one of these contracting parties was a separate and independent incorporation of the State, contracting with each other about the construction and equipment of a line of railroad from El Dorado to Newton, at arm's-length. There must be some affirmative showing by the terms of the construction contract, or by some other evidence, that the Ellsworth company had made an agreement in some form, to be or become responsible for the negligent acts of the construc-

22 — 38 KAS.

tion company, before it can be held liable. This is not shown by the express terms of the construction contract; but on the contrary, that the contract contains a provision that declares, "The construction company shall be liable for all damages to stock or other property, or to persons, which it may cause." It seems to us that from the provisions of this contract, supplemented by all the evidence in the case tending to throw light on these provisions, the West Kansas Construction Company was an independent contractor in the sense that it was answerable to its employer, the Ellsworth company, only as to the results of the work, and not in the details of its management, or the incidents of its prosecution. The test is: Which party controls the work while it is progressing? Who has charge of the management and control of the forces, and who controls the movement and location of the material used in the construction? Who hires the workmen, buys the material, arranges the details, directs and superintends the labor, and is responsible for all failures which do not meet the requirements of the contract, or fulfill the specifications? Who alone is responsible for results produced by separate and independent management? Who has control of the mode and manner of doing the work, subject only to a provision that it must be equal to a fixed rule, or a certain degree of excellence? When that is determined, liability is fixed. This contract contains sweeping provisions indicating its true intent and meaning with respect to this question. The construction company was to survey and locate the line, procure the right-of-way, build the road-bed, tracks, bridges, side tracks, etc., equip the same with engines and cars in accordance with certain specifications. All this implies a condition of things which necessarily makes the construction company an independent contractor, so far as the provisions of the contract furnish a rule for classification. The contractual relation between the Ellsworth Railroad Company and the construction company excludes all consideration of the question of the one being the servant or agent of the other. The status of the construction company is fixed by positive and

express agreement as that of an independent contractor. But inasmuch as the terms of the contract provide that the Ellsworth company, through its officers, was to inspect and accept, provisionally, the road as completed in sections of five miles or more, and as such sections were turned over to and operated by the Ellsworth company it was to haul the supplies for the construction company at specified rates, and that the construction company should have the privilege of running its trains over the line inspected, but that trains should be run under the police rules and regulations prescribed by the Ellsworth company, and under its control as to time and speed of movement, to make the Ellsworth company responsible under the contract it must affirmatively appear that at the time of the death of Willis this particular section of the road had been inspected and accepted under the contract by the Ellsworth company; that the train to whose crew Willis belonged was under the control of that company as to the time and speed of movement, and the other essential elements, such as negligence, etc., necessary to a recovery. But it affirmatively appears that the line of road was not inspected or accepted until after the death of Willis, and there does not appear to be any evidence in the record contradictory of this

1. Contract with construction company — injury — liability — error.

statement. So that neither by the terms of the contract, nor by the performance of the conditions by which the railroad company might have become liable, can it be said that the Ellsworth company is in any manner responsible for the death of the intestate. This general conclusion is supported by the cases of *A. T. & S. F. Rld. Co. v. Davis*, 34 Kas. 202; *St. L. W. & W. Rly. Co. v. Ritz*, 30 id. 31; *Hitte v. R. V. Rld. Co.*, 19 Neb. 620; *K. C. Rly. Co. v. Fitzsimmons*, 18 Kas. 34, and authorities cited in that case; *Hughes v. C. & S. Rly Co.*, 15 Am. and Eng. Rld. Cases, 100; *McCafferty v. S. D. & P. M. Rld. Co.*, 61 N. Y. 178; *Pawlet v. R. & W. R. Co.*, 28 Vt. 297; *West v. St. L. V. & T. H. Rld. Co.*, 63 Ill. 545. In the first and leading

case in our own court on this subject, that of the *K. C. Rly. Co. v. Fitzsimmons*, it is said:

"When a railroad is being constructed, and is in the exclusive possession of and operated by a contractor for its construction, and the railroad company at the time of the injuries complained of are committed has no control thereof, such company is not liable for the damages resulting from the operation of such railroad. In such case, the maxim *respondeat superior* does not apply."

Two propositions have been established, the first being that by the express terms of the construction contract the Ellsworth company is not liable; and second, that the Ellsworth company had not inspected and accepted the section of road upon which the injuries complained of happened, and had not control of the construction trains running thereon, so as to charge specified rates for the transportation thereof, and had not control of such trains as to time and speed of movement, so as to make it liable under the conditions of that provision in the construction contract.

Counsel for defendant in error insist that the Ellsworth company is liable, "because it existed only in name at the time of this accident, and it allowed the Fort Scott company to exercise its privileges, in the exercise of which Willis came to his death under its name." The precise contention is, that as the managing and controlling officers of the Ellsworth company were the same as those of the Fort Scott company, and it allowed the Fort Scott company to exercise its privileges, and by this exercise Willis came to his death, it is therefore responsible. There are some inherent difficulties in arriving at such a conclusion on this state of facts. If the officers of both companies were identical, and the privileges of the Ellsworth company were exercised by the Fort Scott company, by permission of the Ellsworth company, then certainly one, and probably both companies would be liable, but not by reason of the similarity of officers, for that does not fix liability, ( *A. T. & S. F. Rld. Co. v. Davis*, 34 Kas. 202;) but by reason of

the joint exercise in a negligent and careless manner of the privileges of one. But there is an assumption in the statement that has no support from the evidence in the case, for at the time the injuries complained of occurred, the Ellsworth company had no privileges, and had not granted the Fort Scott road any permission to exercise them. So we conclude that there is no ground upon which a liability on the part of the Ellsworth company can be placed in this case, and it was error to render a judgment against it.

We are now to inquire as to the liability of the St. Louis, Fort Scott & Wichita Railroad Company to answer in damages for the death of the intestate. This liability is asserted for the following reasons: The jury in response to special questions submitted, find "that it is a fact that the St. Louis, Fort Scott & Wichita Railroad Company did construct the railroad from El Dorado to Newton, in some respects." They find that the St. Louis, Fort Scott & Wichita Railroad Company was not a party to the contract of construction. They say in response to questions:

"Is it not a fact that the St. Louis, Fort Scott & Wichita Railroad Company did not direct or control the construction of said road, or the men employed in and about the construction thereof? *Ans.:* We do not so understand it."

Question 16: "Is it not true that the engine and car with which the said Willis was connected at the time of his death, had been before that time leased or rented or hired to the West Kansas Construction Company, for which it was to pay the said railroad company a compensation therefor? *Ans.:* There was no evidence showing that there was any compensation paid for the use of said engine and car."

Separate and apart from these evasive findings of the jury, which there is not a particle of evidence to support, there is some evidence in the record tending to show that the crew of the train to which Willis belonged at the time of his death was in the employ of the Fort Scott road, was borne upon its pay-roll, and actually paid by it. In addition to this, it sufficiently appears that the chief engineer and "boss track-layer" of the Fort Scott road acted in the same capacity for the con-

struction company, and testified that they were in the employment of both; and this is true of some other employés. It is also true that the locomotive and cars composing the train upon which the injury took place, belonged to the Fort Scott company. There is evidence tending to show that whenever circumstances required it, the officers of the construction company could have the use and direction of locomotives and cars of the Fort Scott company, but exactly on what terms or under what conditions, does not clearly appear. There being no contract in writing offered which would by its terms create a liability on the part of the Fort Scott road, it was incumbent on the plaintiff below to clearly establish such liability by the facts and circumstances of the case. We are very strongly inclined to doubt whether she has done so, but as this involves disputed questions of fact, we prefer that a jury should once more pass upon them, and we are largely influenced in this desire by the failure of the jury to give frank and intelligent answers to many of the questions propounded to them, and their persistence in this course after the court had directed them to return to their room and answer direct questions, yes or no. The counsel for the plaintiffs in error, when the answers were returned, promptly pursued the proper course, in objecting to their reception, and the trial court vainly tried to have them properly discharge their duties in this regard. We can say as was said in the case of *U. P. Rly. Co. v. Fray*, 31 Kas. 739: "It may be that the general verdict of the jury was right, but the manner in which the jury answered many of the special questions submitted to them is certainly sufficient to raise great doubts as to the correctness even of their general verdict."

2. Jury — evasive answers — judgment, reversed.

The ordinary administration of justice requires that the facts which are alleged to create a liability on the part of the St. Louis, Fort Scott & Wichita Railroad Company should be fairly passed upon by a jury who are so free from passion and prejudice, and so mindful of all other obligations, that they will return such frank and direct answers to special questions of fact submitted to them as the evidence warrants, whether

their answers result to the benefit of one party or the other. We recommend that the case be reversed, with instructions to grant a new trial.

By the Court: It is so ordered.

All the Justices concurring.