BRADFORD CONSTRUCTION COMPANY v. THOMAS W. HEFLIN.

[42 South. Rep., 174.]

1. MASTER AND SERVANT. *Railroad corporation. Fellow servant. Constitution* 1890, *sec.* 193. *Construction company.*

An incorporated construction company having the usual powers of such companies, authorized to construct and own, but not to operate, a railroad, is not a railroad corporation within the meaning of constitution 1890, sec. 193, partially abrogating the common law fellow servant rule as to employes of "any railroad corporation.

2. SAME. *Equal protection of law. Constitution United States XIV amendment.*

Constitution 1890 sec. 193, when properly construed, is not applicable to a corporation not a common carrier, although operating a railroad as an adjunct to its main business, and it is not violative of the fourteenth amendment to the constitution of the United States, providing that no state shall deny any person the equal protection of the laws.

3. SAME. *Construction.*

Constitution 1890, sec. 193, partially abrogating the fellow servant rule as to employes of "any railroad corporation," and providing that the "legislature may extend the remedies herein provided for to any other class of employes," applies only to railroad corporations properly engaged in the business of common carriers, leaving to the legislature the application of the principle to other similar cases, and does not itself apply to railroads owned and operated as an adjunct to the main business of their owners, and hence does not affect an employe of a construction company operating a train in the building of a railroad.

4. SAME. *Perils of operating trains.*

The section applies to employes of railroads only when the peril comes by the hazardous nature of the business of operating railroad trains.

5. APPEAL AND ERROR.  *Review.  Parties entitled to allege error.*

Where an action for injuries is brought by a servant against a rail-
road company and a construction company, by whom he is em-
ployed, and no appeal is taken from a judgment in favor of the
railroad company, plaintiff, on an appeal by the construction com-
pany from a judgment against it, cannot contend that the two
companies were practically one, and that therefore he was an
employe of the railroad, and that the doctrine of fellow servants
as applicable to the construction company did not arise.

6. CONSTITUTIONAL LAW.  *Equal protection of laws.  Corporations.  Ab-
rogation of fellow servant rule.  Laws 1898, ch. 66, p. 85.*

Laws 1898, ch. 66, p. 85, sec. 1, partially abrogating the doctrine of
fellow servants and assumption of risk from defective appliances
as to an employe of "any corporation," is unconstitutional as im-
posing restrictions on all corporations, without reference to any
differences arising out of the nature of their business, not imposed
on natural persons, and therefore denying corporations the equal
protection of the laws.  *Ballard* v. *Mississippi, etc., Co.,* 81 Miss.,
507, *approved.*

7. MASTER AND SERVANT.  *Personal injuries.  Fellow servants.  Who
constitute.*

One employed to shovel dirt from between construction cars, pushed
there from such cars by the plow attached to the engine by a
cable, is a fellow servant of the engineer as to an injury caused
by the engine starting while the employe was assisting in replac-
ing the plow in position.

FROM the circuit court of, first district, Hinds county.

HON. DAVID M. MILLER, Judge.

Heflin, the appellee, was plaintiff in the court below; the con-
struction company, a West Virginia corporation, the appellant,
and the Gulf and Ship Island Railroad Company, a Mississippi
corporation, were defendants there.   The judgment of the trial
court was against Heflin, the appellee, in favor of the railroad
company, but in favor of Heflin against the construction com-
pany, and the construction company appealed to the supreme
court; but Heflin, the appellee, did not appeal from the judg-
ment acquitting the railroad company from liability.

The plaintiff demanded damages for personal injuries received
by him because of the negligence of another employe.   Heflin

was in the employ of the construction company, which was engaged, under contract with the railroad company, in building a new line of railway track for said railroad company from Mendenhall, in Simpson county, to Columbia, in Marion county. In carrying out its contract in the construction of the line, the construction company had leased from the railroad company some cars and engines, and was using some of these leased cars and one of the leased engines at the time Heflin received his injuries. The work being done at that time was unloading dirt from flat cars in order to make a fill. The crew was composed of a conductor in charge, an engineer, fireman, two brakemen, and two laborers. Heflin was one of the laborers; his duties being to remove with a shovel the dirt which fell between the cars when the sweep or plow used in moving the dirt was pulled from car to car, which was done by means of a cable extending from the sweep or plow to the locomotive, being attached to each. On the occasion in question the plow had been drawn out of place, and Heflin, with others, undertook to prize it back into its place, using an iron bar as a lever. While so engaged, the fireman, who was on the engine, moved the engine forward by order of the engineer, as he claimed, but without order from the conductor. This pulled the cable taut and moved the plow, causing the iron bar to strike and injure the plaintiff. The suit was a joint one against the two companies. On the trial the court below gave a peremptory instruction for the railroad company, but at plaintiff's request gave a like instruction in plaintiff's favor against the construction company, and the jury assessed damages at $2,500.

On appeal, in answer to the ideas which were urged upon and which controlled the trial court, the appellant contended that the Gulf & Ship Island Railroad Company and the Bradford Construction Company are two separate and distinct corporations, one being a railroad company, authorized by its charter to actually engage in the operation of a steam railroad and in the transportation of freight and passengers as a common carrier, while the other was chartered as a construction company simply, and

is not authorized to operate a railroad, but is authorized to build or construct roadbeds and railroad tracks; that the two corporations had contracted one with the other for the construction-of the new line of railroad, which the construction company was building for the railroad company, and that all their acts were separate and distinct, and there was no unity of interest or joint liability to Heflin for the injuries received by him; that the judgment in favor of the railroad company, unappealed from by Heflin, precluded any recovery by him against appellant on the idea that the two corporations were and are identical. It was further contended by appellant that Heflin and the fireman, to whose negligence the injuries are attributed, were fellow servants, employed by appellant in the construction of a railroad, engaged in the same kind of work and subject to the orders of the same superior officer, the conductor in charge of the crew; that they were fellow servants in the particular instance just the same as if the scoop had been operated by hand, or pulley, or other device; that the operation of the plow in the removal of dirt from the flat cars by steam furnished by the engine was an incident in the work of construction; and that such operation of the scoop or plow by the steam engine was in no sense the operation of a railroad train. Appellant insisted upon a strict construction of sec. 193 of the constitution of Mississippi of 1890, since it is in derogation of the common law. Said section is as follows:

"SEC. 193. Every employé of any railroad corporation shall have the same right and remedies for any injury suffered by him from the act or omission of said corporation or its employes, as are allowed by law to other persons not employes, where the injury results from the negligence of a superior agent or officer, or of a person having the right to control or direct the services of the party injured, and also when the injury results from the negligence of a fellow servant engaged in another department of labor from that of the party injured, or of a fellow servant on another train of cars, or one engaged about a different piece of

work.    Knowledge by any employe injured, of the defective or unsafe character or condition of any machinery, ways, or appliances, shall be no defense to an action for injury caused thereby, except as to conductors or engineers in charge of dangerous or unsafe cars, or engines voluntarily operated by them.    Where death ensues from any injury to employes, the legal or personal representatives of the person injured shall have the same right and remedies as are allowed by law to such representatives of other persons.    Any contract or agreement, express or implied, made by an employe to waive benefit of this section shall be null and void; and this section shall not be construed to deprive any employe of a corporation or his legal or personal representative of any right or remedy that he now has by the law of the land. The legislature may extend the remedies herein provided for to any other class of employes."

Appellant contended that a railroad corporation, within the meaning of this section, is one engaged in the transportation of freight and passengers as a common carrier, whose duties are *quasi* public in their nature, and that any other corporation does not come within the provision of the section; and, therefore, Heflin not being an employe of a railroad corporation within the meaning of the section, and the fireman not being such an employe, it has no application to the case, and no liability rests upon appellant for the injury.

The propositions advanced by the appellee were: "(1) In view of the practical and apparent unity between the two corporations, Heflin must be deemed the employe of the Gulf & Ship Island Railroad Company, and therefore no question as to his being a fellow servant of the construction company arises.    (2) The construction company, in operating the train in question, was a railroad corporation, within section 193 of the constitution." Appellee contended that the criterion of liability should be the character of the work performed and the hazard connected therewith; that the liability should be the same for a construction

company building a railroad and operating steam engines and cars in performing such work as for a railroad company, performing a similar work; that the operation of the train was the same, and the hazard and danger to employes were the same, as if engaged in the transportation of freight or passengers as a common carrier; that, under a contract with the Gulf & Ship Island Railroad Company, the construction company was given the right to run trains subject to the rules of the railroad company, and the crew was governed by the same rules as the crews of the railroad company; that the distinction between the two corporations is only in name; and that the construction company was a railroad corporation within the letter and spirit of the constitutional provision. "(3) If not within sec. 193, then appellant was a corporation, and liable under chapter 66, page 84, Acts of 1898, which applies to all corporations; and this, notwithstanding the decision in the *Ballard case*" (which should be overruled). "(4) The negligent fireman (acting engineer) was in a different department of labor from plaintiff." Appellee further contended that he and the fireman (acting engineer), through whose negligence he received the injuries complained of, were in different departments of labor, their duties being entirely different, and that appellee could not reasonably contemplate the danger or hazard which might result from the negligence of the acting engineer.

*McWillie & Thompson,* and *James H. Neville,* for appellant.

The common law fellow servant rule is too well known to require citation of authority in its support. We will, however, be excused for calling attention to a few of this court's decisions anouncing and applying the rule. *Vicksburg, etc., Railroad Co.* v. *Wilkins,* 47 Miss., 404; *New Orleans, etc., Railroad Co.* v. *Hughes,* 49 Miss., 258; *Howd* v. *Mississippi, etc., Railroad Co.,* 50 Miss., 178; *Memphis, etc., Railroad Co.* v. *Thomas,* 51 Miss., 637; *Chicago, etc., Railroad Co.* v. *Doyle,* 60 Miss., 977; *McMaster* v. *Illinois, etc., Railroad Co.,* 65 Miss., 264 (s.c., 4

South. Rep., 59); *Louisville, etc., Railway Co.* v. *Petty,* 67
Miss., 255; *Lagrone* v. *Mobile, etc., Railroad Co.,* 67 Miss.,
592 (s.c., 7 South. Rep., 432); *Millsaps* v. *Louisville, etc.,
Railway Co.,* 69 Miss., 423 (s.c., 13 South. Rep., 696). The
rule has been modified in this state only so far as concerns the
servants of railroad corporations. Sec. 193 of the constitution
of 1890, and the uncondemned statutes enacted on the subject,
by express terms relate to the employes of "railroad corpora-
tions;" the condemned statutes, ch. 87, Laws 1896, and ch. 66,
Laws 1898, which undertook to extend the same rules to the
employes of "any corporation" were held unconstitutional in
*Ballard* v. *Cotton Oil Co.,* 81 Miss., 507 (s.c., 4 South. Rep.,
533), as violative of the fourteenth amendment to the constitu-
tion of the United States, prohibiting any state from denying
to any person the equal protection of the laws.

No state more rigidly enforced the common law fellow servant
rule before the adoption of the constitution of 1890, than Miss-
issippi, and when her supreme legislature, the constitutional
convention, with all the power of sovereignty, acted upon the
subject, it modified but did not destroy the rule, and even its
modification was nothing more than a provision to the effect that
the rule should have no application to the employes of railroad
corporations in four separate states of case, thus giving supreme
legislative sanction to the perpetuation of the rule, as it had pre-
viously been expounded by this court, in its application to the
servants of all masters save railroad corporations.

Judge TERRAL, in *Farquhar* v. *Alabama, etc., Ry. Co.,* 78
Miss., 193 (s.c., 28 South. Rep., 853), in delivering the
opinion of this court and speaking of the decisions in
two of the leading cases above cited, said, at page 200:
"And especially may we not overrule the case of *New
Orleans, etc., R. R. Co.* v. *Hughes,* and *Dowell* v. *Vicksburg, etc.,
R. R. Co.,* since the constitutional convention of 1890, with full
knowledge of the doctrine of those cases, has, in sec. 193 of that

instrument (the constitution of 1890) defined the rights between employes and railroad corporations, and has left untouched the rights of the parties in cases like the present." How admirable the statement and how true, even in its application to the case then before the court in which a railroad company was defendant; but how much more forceful does the statement appear when its underlying thought is applied to an effort to have sec. 193 of the constitution reach the employes of others than railroad corporations. The constitution makers did not intend to change the common law fellow servant rule, except to forbid its application to a designated class of servants, the employes of railroad corporations, and of course the courts cannot and will not go further than the law-making power has gone, especially in a case like this, where the very legislation on the subject carries with it a sanction of the rule thereby modified beyond the exact limits of the modification. To modify a rule by providing that it shall not apply to designated subjects is equivalent to an express enactment of it as to all others. Had the constitutional convention of 1890 expressly repealed the common law fellow servant rule and re-enacted it in direct terms, excepting from the re-enactment the employes of railroad corporations, it would have simply put in a different form exactly what it did do, by sec. 193 of the constitution. In the *Ballard case, supra,* this court decided that the legislature was without power to extend to the employes of all corporations the constitutional modification of the fellow servant rule. If this be true, surely the courts have no such power.

The only question, therefore, on the sufficiency of the declarations is whether or not the appellant was shown by their averments to have been a "railroad corporation" and manifestly it was shown to be, what it really is, a construction company, and not a "railroad corporation." A construction company is not a railroad company. *Griggs* v. *Houston,* 104 U. S., 553; *Beeson* v. *Busenbark,* 44 Kan., 669 (s.c., 10 L. R. A., 839).

By its very terms, the section (193) is applicable only to employes of "any railroad corporation." The concluding clause of the section empowers the legislature to extend the remedies therein provided to any other class of employes, showing that the constitutional convention not only used language the unquestioned and unquestionable meaning of which limits the application of the section to employes of railroad corporations, but deemed it proper to expressly authorize legislation by which other classes of employes might be given a right to the remedies provided for by the section. The legislature has never exercised the power conferred on it by the concluding clause.

The constitutional provision under consideration has no application even to a railroad corporation, unless it be engaged in the operation of an established railroad in this state. The operation of a railroad, the carrying of freight and passengers for the public, is at least a *quasi* public business; one which the state regulates and controls because of its public nature. The construction of a railroad track is neither a public nor a *quasi* public undertaking. It is private work. It usually, but not always—for many a piece of track construction has been abandoned before completion—results in the production of property which is afterwards dedicated to public use. The rights of the public come into existence when the operation of the railroad is begun and not before. The legislation of the country on the subject of regulating railroads is proof of this. No state or country, of which we are advised, has ever appointed a commission to supervise the construction of railroads. Supervision of railroads in this country begins when the operation of the railroads commence; in other words, when the railroad companies begin to do public or *quasi* public business.

The construction of new railroads has always been liberally favored in this state; such work has not been carried on in Mississippi to such an extent, or in such manner, as to engender abuses, arousing public attention, and not a member of the constitutional convention had such work in mind, we dare say,

when the section was adopted. It seems to us from the language of the section and from the history of the state that all of them had in mind only the operation of railroads.

There are different departments of labor and different pieces of work in the operation of railroads, while properly speaking, these terms—the terms of the constitutional section under consideration—cannot fairly be applied, we suggest, to persons engaged in the construction of a railroad track. The man who finances the work, to illustrate, is too far removed from the work to be engaged in it, in any proper sense, and the man who purchases tools and materials is not engaged in it; he is providing instrumentalities by which others may engage in the work. The laborers who are employed at clearing up the right of way are simply clearing the land of its timber, so that the railroad track can be constructed. If they be held, however, to be constructing a railroad, then they are engaged in the same work with those who dig down the hills, fill up the hollows and lay down the crossties and iron rails. Unless the construction of a railroad track, although done by a railroad corporation, be fairly within the terms "departments of labor" and "different pieces of work," then such work is without the scope and meaning of sec. 193 of the constitution. In the operation of a railroad, employes are injured by the negligence of other employes in a different department of labor or about a different piece of work. This is not true of railroad construction, even if we regard it as consisting of "different departments of labor" and "different pieces of work." Speaking practically, the man who is cutting timber from the right of way does not injure by his negligence the one who is moving dirt, nor does the man who moves the dirt injure the man who is putting down crossties and rails. If such cases of injury can be conceived, they do not in fact happen once in thousands of times, and the public mind was not aroused by the inadequacy of the remedy available to such cases. It was injuries resulting in the operation of established rail-

roads which the constitutional convention had in mind, and which alone caused it to enact sec. 193.

Looking again at the language of the section, it provides that "knowledge by an employe injured of the defective or unsafe character or condition of any machinery, *ways* or appliances, shall be no defense to an action for injury caused thereby, etc." What does the word *"ways"* in the quoted part of the section mean? Manifestly it means *tracks* or *roadbeds.* If the word has a more comprehensive meaning, the force of the argument is not weakened, since its meaning embraces tracks and road-beds. Taking as a premise, therefore, that the word "ways" in the section embraces tracks and roadbeds, the conclusion cannot be resisted that the construction of a railroad (even if being carried on by a railroad corporation) is not within the scope of the constitutional provision, since the constitution-makers were too wise to have proceeded upon the idea that construction companies, or railroad corporations, would first provide perfect, or practically perfect, railroad tracks and roadbeds, *ways,* and then commence their construction. It was not the purpose of the constitution-makers to be unjust or to require the impossible, or to embarrass the construction of new railroads. All of these purposes must be attributable to them unless one of two things be true: either they acted in ignorance of the meaning of the terms they employed, or the terms of the section are not applicable where an employe is injured while engaged in the construction of a new line of railroad.

Consider the difficulties which arise in case the section be held to be applicable to the employes, even of railroad corporation, engaged in constructing a new line of railroad. It could not be applied to employes engaged in cutting away the timber from the right of way, unless it be applied to laborers in the service of every farmer of the state—engaged in the identical same business, clearing land of its timber—and to hold that the section applied to one class and not to the other would be to deny the one the equal protection of the laws, contrary to the four-

teenth amendment to the constitution of the United States. *Ballard* v. *Cotton Oil Co.,* 81 Miss., 507 (s.c., 34 South. Rep., 533); *Johnson* v. *St. Paul, etc., R. Co.,* 8 L. R. A., 419.

This difficulty presents itself in full force when the section is considered in its application to laborers engaged in the construction of new lines of railroad in nearly, if not all, the work involved in such construction; for example, the getting out of crossties, merely cutting timber from the forest, engaged in by many private individuals, and the erection of bridges, a business engaged in by individual and corporate contractors, counties and municipalities generally.

The constitution (sec. 193) cannot be applied to all business in which employes of railroads engage without a palpable violation of the federal constitution.

Let us consider a case: Two bookkeepers or clerks in the employ of the railway company, say at the depot here in Jackson, having the same sort of clerical work to perform as is performed by hundreds of other bookkeepers in the state whose employers are merchants, bankers, manufacturers, etc., private persons, copartnerships and corporations, other than railroad companies, and in the course of their labors, one of the railway's bookkeepers, while serving the master in the office, negligently causes injury to the other. Would the railway company be liable to the injured one? It would seem absurd to hold that it would be, unless at the same time any private person would be liable under the same conditions for an injury inflicted by one of his bookkeepers upon the other. To hold the railway company and not a private person liable in such a case would manifestly be to deprive the railway company of the equal protection of the laws and to deprive it of property without due process of law.

Take another case: Suppose a railroad corporation to have acquired a tract of land in this state upon which it was engaged in growing catalpa trees to be cut into crossties in the future— and many railroads are now engaged in that very business—and suppose an enterprising farmer owning an adjoining tract con-

ceives that he can reap a harvest by entering into the business of growing catalpas for sale in the future to the less provident or then newly-constructed railroads. Both are engaged in exactly the same business. An employe of each engaged in the business is injured by the negligence of his fellow servant. Can the railroad be liable and the farmer exempt from liability? Most certainly not, if the fourteenth amendment to the constitution of the United States means anything.

It will be remembered that because railroads are engaged in a public business, some authorities hold they can be put in a class to themselves in respect to liability to a servant for the negligence of a fellow servant. There are some expressions in the *Ballard case (Ballard* v. *Mississippi Cotton Oil Company,* 81 Miss., 507 [s.c., 34 South. Rep., 533]), in commenting upon cases decided by the supreme court of the United States, seemingly, at least, to the effect that the question of the public or private business in which the corporation is engaged might cut a figure in the discussion. It must be remembered, however, that a railroad company is not engaged in a public business while constructing a new line. Let us take the case of a corporation which is engaged in the construction of bridges, and let us assume that it never had and never would construct a bridge except one which after its completion would be a public one at the employment of a county or municipality of the state. Is it not clear that such bridge company, although engaged in building what would become a public bridge, would not be within the terms of our constitutional provision, sec. 193, or the statutes upon the same subject? And so we may readily conceive of any number of corporations, other than railroads, engaged in the construction of all sorts of structures which would become public after completion—public mills, public elevators, steamboats, telephone and telegraph plants, street railroad plants, municipal bridges, buildings, and the like—and yet none of them would be within the constitu-

tional and statutory rules embodied in our legislation.    The
*Ballard case, supra,* leads, we think, inevitably to the conclusion.
that the section of the constitution and statute above referred
to are inapplicable even to a railroad company engaged in con-
structing a new railroad.

Appellant is not and never was a railroad corporation.    It
is, as its name implies, simply and only a construction company.
The statutory modifications of the fellow servant rule in some
of the states, notably Iowa, is much broader than our constitu-
tional section on the subject.    This fact must not be overlooked
in considering the judicial decisions of such states.

The charter of appellant shows it to be a corporation of the
state of West Virginia.    It was incorporated November 13,
1895, under the general corporation laws of that state.    The
following quoted paragraph is all of the charter defining its
powers and purposes:

"The undersigned agree to become a corporation, by the name
of the Bradford Construction Company, for the purpose of con-
structing and owning, repairing, enlarging, completing and
equipping any railroad or other public works or improvements,
the building and equipping of telegraph or telephone lines, and
the buying and sale of timber and of lumber."

At the time this charter was granted, 1895, the West Virginia
code of 1891 was in force.    By reference thereto it will be seen
that two separate and distinct schemes for the formation of
corporations are provided therein; one for the incorporation of
railroad companies alone (code of West Virginia, 1891, p. 523,
*et seq*), the other for corporations other than railroad corpora-
tions (same code, pp. 513, 522), and appellant's charter was so
manifestly granted under the provisions of that code relating
to corporations other than railroad companies that the question
is not debatable.

The word "owning" in appellant's charter must necessarily
be construed to authorize the ownership by appellant of rail-
roads as a mere incident to construction—the main purpose of

appellant's creation, and for its protection in case of the enforcement of judgments or liens on them for moneys due for their construction—or the word is meaningless for want of power in the executive officers of West Virginia to make such a grant in the manner in which appellant's charter was approved. It is well settled that the recitals of a charter, taken out under general corporation laws, cannot confer powers not authorized by the statute under which the charter was approved. *Adams* v. *Tombigbee Mills,* 78 Miss., 576; (s.c., 29 South. Rep., .70); 1 Thompson on Corporations, sec. 216; *Ib.,* sec. 229; 1 Clark & Marshall on Corporations, sec. 127, and authorities cited.

Power to own a railroad is a very different thing from the ownership of a railroad. Every individual citizen is empowered to own, but very few of them really do own, a railroad. Power to own a railroad does not make a man a "railroad man," nor does power to own a railroad make a corporation a "railroad corporation." *Ellington* v. *Beaver Dam Lumber Co.,* 93 Ga., 53 (s.c., 19 S. E. Rep., 21).

The plaintiff was not an employe of a railroad corporation, nor was the negligent fireman such an employe. Unless the injured and the negligent employe both be in the service of a railroad corporation, the section does not apply. It does not read the employes of a railroad corporation or of those engaged in operation or constructing a railroad. Nothing is added to the words "railroad corporation" to extend the section beyond their literal meaning.

The Minnesota case relied on by appellee in the court below, *Roe* v. *Winston,* 90 N. W. Rep., 122, construing a Wisconsin statute, is easily distinguished and shown to be of no value here. The statute provides that " 'every railroad company' operating a railroad . . . shall be liable to its employes in damages for all injuries sustained by them while engaged in the line of their employment by reason of the carelessness and negligence of other employes, the injured employe being free from contributory negligence." Section 1816, statutes of Wisconsin,

1898. But sec. 1861, same statutes, defined a railroad company to mean and embrace any company, etc., or person managing, maintaining and operating or in posession of a railroad, whether as owner, *contractor,* lessee, mortgagee, trustee, assignee, or receiver.

The Wisconsin statute, the identical sec. 1816 construed by the Minnesota court in *Roe* v. *Winston,* 90 N. W. Rep., 122, *supra,* has since been decided by the Wisconsin court "to have been intended to embrace within its provisions . . . only such railroad companies as are engaged in a general railroad business for the carriage of passengers and freight, that is, a common carrier in the fullest sense." *McKivergan* v. *Alexander, etc., Co.,* 102 N. W. (Wis.) Rep., 332, and the Minnesota case, *Roe.* v. *Winston,* was expressly repudiated.

The case of *McKnight* v. *Iowa, etc., Construction Co.,* 43 Iowa, 344, cited in the Minnesota case, is one of those supreme court decisions specimens of which are occasionally found in the books wherein judges undertake to legislate. The Iowa judges seem not to have known that statutes in derogation of the common law should be strictly construed. Statutes fixing a new liability upon railroad companies and in derogation of the common law liability must be strictly construed. *Atkinson, etc., R. Co.* v. *Davis,* 34 Kan., 202; *St. Louis, etc., R. Co.* v. *Ritz,* 30 Kan., 31; *West* v. *St. Louis, etc., R. Co.,* 63 Ill., 545; *Hitte* v. *Republican, etc., R. Co.,* 19 Neb., 620; *McCafferty* v. *Spuyten, etc., R. Co.,* 65 N. Y., 178; *Pawlette* v. *Rutland, etc., R. Co.,* 28 Vt., 297.

The facts in the Iowa case are but poorly stated in the report, but it seems apparent from the opinion of the court that the defendants in the case were not constructing a new railroad but bettering an old one. And it was provided by sec. 1278 of the same Iowa code (1873) that "all the duties and liabilities imposed upon corporations owning or operating railways by this chapter (the chapter embracing sec. 1307) shall apply to lessees or other persons owning or operating such railways as fully as

if they were expressly named herein, and any action which might be brought, or penalty enforced, against any such corporation by virtue of any provision of this chapter, may be brought or enforced against such lessees or other persons." The Iowa case is nothing more than a construction of the statute last quoted holding that persons engaged in bettering an established railway are within its terms. It will be noted that in the Iowa case the injury occurred while the train was being run over a part of the road. In the case at bar the train was being used in actual construction work when plaintiff was injured.

We have no statute in our state extending the provisions of sec. 193 of the constitution to any person or corporation not literally within its terms.

The subsequent Iowa cases are not in harmony with the *McKnight case;* at least, they all require that both the injured and negligent servant shall have been engaged in operating a railroad. *Malone* v. *Burlington, etc., R. Co.,* 65 Iowa, 417; *Potter* v. *Chicago, etc., R. Co.,* 46 Iowa, 399; *Foley* v. *Chicago, etc., R. Co.,* 65 Iowa, 644; *Matson* v. *Chicago, etc., R. Co.,* 68 Iowa, 22; *Luce* v. *Chicago, etc., R. Co.,* 67 Iowa, 75.

Private railroads operated in connection with a logging and lumber business are not within statutes forbidding the application of the fellow servant rule to the employes of railroad corporations. *McKivergan* v. *Alexander, etc., Co.,* 102 N. W. (Wis.) Rep., 332; decided January, 1905. *Beeson* v. *Busenburk,* 10 L. R. A., 839 (s.c., 44 Kan., 669); *Ellington* v. *Beaver Dam Lumber Co.,* 93 Ga., 53 (s.c., 19 S. E. Rep., 21; *Railey* v. *Garbutt,* 122 Ga., 288 (s.c., 37 S. E. Rep., 360); *Williams* v. *Northern Lumber Co.,* 113 Fed. Rep., 382; *Palangio* v. *Wild River Lumber Co.,* 86 Me., 315 (s.c., 29 Atl. Rep., 1087).

We set off against the Iowa case, or cases, if more than one of them can be found, the Wisconsin cases, especially *McKivergan* v. *Alexander, etc., Co.,* 102 N. W. (Wis.), 332; the Kansas cases, especially *Beeson* v. *Busenburk,* 44 Kan., 669 (s.c., 10

L. R. A., 839) ; the Georgia cases, especially *Railey* v. *Garbutt,* 112 Ga., 288 (s.c:, 37 S. E. Rep., 360) ; and *Griggs* v. *Houston,* 104 U. S., 553.

But over and above all, we put sec. 193 of our constitution in contrast with the statutes of other states. By it the common law fellow servant rule was not abrogated, simply modified, even as to railroad corporation and modified less than by the statutes of the other states. And being in derogation of the common law, the section should be strictly construed, especially in determining the scope of the words "railroad corporations."

The fireman by whose negligence plaintiff was injured and the plaintiff were fellow servants within what is left of the fellow servant rule, even in its application to the employes of railroad corporations, by sec. 193 ·of the constitution. They were both engaged in the same work, the unloading of dirt from the flat cars. They were both subject to the orders of the conductor, and neither subject to the orders of the other. The fireman kept up the fire in the engine that it might pull the plow and thereby throw the dirt off the cars; plaintiff removed the dirt from the rails on the track that fell thereon as the plow passed from car to car, in order to prevent derailments and enable the plow to do the work—throw the dirt off the cars. If it be said that the fireman at the time of the accident was acting as engineer, the conclusion is the same. Plaintiff was not subject to the orders of the engineer; they were fellow servants; the engineer manipulated the engine to make it pull the plow and throw the dirt from the cars; the plaintiff kept the rails free of falling dirt to prevent derailments and to enable the plow to throw the dirt from the cars.

The common law fellow servant rule is changed by the constitution in four, and only four, states of case or particulars. This cause does not come within any one of them.

The injury to plaintiff did not result (a) from the negligence of a superior agent or officer, (b) nor from the negligence of a

person having the right to control or direct the services of the plaintiff, (c) nor from the negligence of a fellow servant engaged in another department of labor from that in which plaintiff was engaged, (d) nor from the negligence of a fellow servant engaged about a different piece of work.

Had the fireman been pulling the plow by hand, it would at once be conceded that he and the plaintiff were engaged in the same department of labor and in the same piece of work, unloading dirt from the cars.   And the same concession would be made had the fireman been pulling the plow by means of a pulley and tackle or driving a pair of horses pulling the plow. And the same concession must in reason be made where he was driving an engine pulling the plow.   Certainly this is true unless warrant can be found in the section (193) for its application to every case in which "the powerful and dangerous agency of steam" is employed; but such a finding would do violence to the Ballard case.

There is a judgment, rendered in this very case, recorded as if part and parcel of the judgment upon the affirmance of which the appellee insists, finally and conclusively determining that the Gulf & Ship Island Railroad Company is not liable to plaintiff.   This judgment has not been appealed from by Heflin, and even if he could prosecute an appeal therefrom, it would necessarily be fruitless, because he was content with said judgment, and did not make any motion for a new trial.   Were he to prosecute an appeal, or cross appeal, it would be dismissed.   *Armstrong* v. *Whitehead,* 81 Miss., 35 (s.c., 32 South. Rep., 917).   "It is a general rule that all errors correctable by a motion for a new trial and not assigned, are deemed to have been waived."   14 Ency. Pl. & Pr., 846 a. b., Thompson on Trials, sec. 2712.

This being true, the Gulf & Ship Island Railroad Company being conclusively proved not to be liable to Heflin, how can he insist that the Bradford Construction Company is liable to him because of a real or supposed identity with the railroad

company? To be liable, the Bradford Construction Company must not be identical with the railroad company, since identity, by force of the judgment, proves no liability.

The argument made by our friends cannot make a natural person or a construction company become a railroad corporation simply because he or it operates or constructs a railroad. The proposition seems absurd. Continuity of existence for all time, or for a number of years, under modern statutes, is a fundamental conception inseparable from the idea of a corporation. What becomes of the idea if a natural person, liable to die any moment, is transformed into a "railroad corporation" by applying his energies to the performance of a designated labor, the construction of a railroad track? What becomes of the old slogan: "No body to be punished and no soul to be damned?" Because Heflin was engaged in the construction of a railroad track, did he and each of his associates become a "railroad corporation"? If a natural person becomes a "railroad corporation" by engaging in the construction of a railroad track, does he remain one all night, when he and his employes are asleep in their beds, and have wholly ceased to be so engaged? How long after such a person ceases railroad labor before he is re-transformed? Is every colored railroad section hand in the state a "railroad corporation" in the day time, when at work, and just a common negro at night?

Of course, all this is absurd, but not more so than is the idea that a corporation, not a "railroad corporation," is transformed into a "railroad corporation" by entering upon the construction of a railroad track. Suppose the Bradford Construction Company not to be, and it is not, a "railroad corporation," and suppose further that it engaged in constructing a railroad track only on the day Heflin was hurt. Would this court decide it was *not* a "railroad corporation" both before and after the day on which plaintiff received his injuries, but was a "railroad corporation" on that day, except early in the morning before work began, during the noon hour when the hands had knocked off,

and in the evening after the labor of the day was over? This illustrates that the character of a corporation is not determined by any special piece of work upon which it may enter. A church, duly incorporated with only such powers as usually belong to churches, might undertake to construct a railroad track. Would this court hold a church so doing to be a "railroad corporation"? You would simply say the church was exercising *ultra vires* powers, and the idea of its being a "railroad corporation" would not enter the mind. A construction company, although authorized by its charter to do so, does not any more become a "railroad corporation" by entering upon the construction of a railroad track than does a church.

Our adversaries seek to show in argument that sec. 193 of the state constitution, unless construed to be broader than its terms, is violative of the federal constitution. This, however, does not establish their contention; *it does not follow that this court must interpolate terms in sec. 193 in order to save it from condemnation.* We have never before known the proposition to be advanced that it is the duty of a state court to interpolate language into a state constitutional provision in order to save it from conflict with the federal constitution. Take the argument of our friends and consider it in every aspect, and you can make nothing out of it except that it is an appeal for this court to legislate in order to evade the federal constitution.

Look at sec. 193. Does it say anything about the employes of construction companies or of natural persons or of any other companies except the designated "any railroad corporation?" Are you called upon to say that the terms, "any railroad corporation," covers all sorts of companies or individuals who may be building or who may own or who may operate a railroad? To so interpret the two words "railroad corporation" is to legislate and is not to render judgment.

The authorities cited by counsel for appellee, which they claim justifies such a construction of sec. 193 as to make it cover this case, are beside the mark. The English Employer's Lia-

bility Act is misconstrued by counsel, if their reference to it be made—and we are bound to assume it is—in good faith. It is said by counsel that the English Employer's Liability Act has been construed to extend to construction trains, used by construction companies in building an extension. If counsel had stopped with this statement it would not have been bad, but they tell us in the very next sentence, *"the word so construed was railway."* This statement must have been made thinking that it would carry the mind to the conclusion that if "railway" embraced a construction company, "railroad" ought to do so. Even in this they overlook the fact that sec. 193 applies only to employes of "any railroad corporation." But the English judges never decided that the term "railway" extended to and embraced a construction train used by a construction company.

The judge who does not know the difference between a "railway" on the one hand and a "construction train" on the other is not worthy of a moment's consideration, and it would make no difference what he might decide. The English Employer's Liability Act (to be found in 2 LaBatt's Master and Servant, p. 1926) provides, "Where . . . personal injury is caused to a workman . . . subs. 5, by reason of the negligence of any person in the service of the employer, who has the charge or control of any . . . locomotive engine or train upon a railway, the workman . . . shall have the same right of compensation and remedies against the employer as if the workman had not been a workman of nor in the service of the employer, nor engaged in his work."

As will be seen, this act imposes liability for the negligence of an employe operating a locomotive or train regardless of the character of his employer, whether a railroad or other corporation or a natural person.

*Alexander & Alexander,* and *George B. Power,* for appellee.
Heflin was a common laborer in a gang operating a steam shovel, and was injured while aiding in replacing a sweep or

plow on a flat car, from which it had partially fallen. He had been working with his gang at the shovel, but was sent out with a dirt train to "cut out" the dirt from between the cars. This was on an extension of the Gulf & Ship Island Railroad. He was near the sweep when it was thrown against him by a sudden start of the engine. He was injured through the gross carelessness of an acting engineer on one of the railroad company's engines, to which the sweep was attached by a cable. He never heard of the Bradford Construction Company, but thought he was working for the railroad company. His counsel, however, learned that the railroad company was building the extension under an alias, and, not knowing what the secret arrangement between the two companies was, sued both. There was a peremptory instruction for the railroad company and a peremptory instruction as to liability against the construction company. There was a small verdict for plaintiff and the construction company appeals.

Our propositions are as follows:

(1) In view of the practical and apparent unity between the two corporations, Heflin must be deemed the employe of the Gulf & Ship Island Railroad Company, and, therefore, no question as to his being a fellow servant of the construction company arises.

(2) The construction company, in operating the train in question, was a railroad corporation within sec. 193 of the constitution.

(3) If not within sec. 193, then appellant was a corporation and liable under ch. 66, acts of 1898 (p. 84), which applies to all corporations; and this, notwithstanding the decision in the Ballard case.

(4) The negligent fireman (acting engineer) was in a different department of labor from plaintiff.

The Bradford Construction Company is a phase of the Gulf & Ship Island Railroad Company. The manner in which rail-

road companies build lines and extensions is so well known as to be quite a matter of common knowledge. The railroad company rarely ever builds a road in its own name. The officers or owners of it form a subsidiary corporation and use its name in the construction work. The reason for this is obvious. In no other way can watered stock be issued, or bonds to the amount of three or four times the actual cost of the road. The statutes of all states contain provisions against issuing stock except for cash or its equivalent actually paid in, and, of course, bonds cannot be issued by a corporation to itself. But by means of a dummy corporation both results are accomplished. When the road is built the construction company is dissolved or forgotten, and the owners or promoters of the railroad own bonds and stock often many times in excess of the actual cost, and thus the spirit of the statute is violated for all future purposes, such as rate regulation and supervision, the company claiming the right to make interest on the entire issue. So in this case. The two companies have the same president, the same general manager, the same auditor and treasurer, and use the same offices. Poor Heflin, a plain, unlettered man, never heard of the construction company. If he had, the scheme was beyond him. All he knew was that the Gulf & Ship Island Railroad Company was building an extension. The track was called the Gulf & Ship Island track. The engines were lettered "G. & S. I. R. R. Co." The cars were marked "G. & S. I. R. R. Co." The stations used were Gulf & Ship Island Railroad stations. The crew was the same, and ran over the finished and unfinished track alike and indifferently. Reports were made to Mr. Gardner, superintendent. M. S. Gulley, master mechanic, did not even know where the Bradford Construction Company was. The treasurer of the railroad company would make out a bill from himself to himself. Heflin said he was employed by Mr. Marsh, the Gulf & Ship Island man, and knew nothing of the construction company. There is some testimony by employes that Marsh was an employe of the construction company, but

he had been in the employ of the Gulf & Ship Island Railroad
Company. When, where and how he changed is not shown.
There was no ostensible change.

Now, as to whom Heflin was employed by and for. We have
his own understanding of it. The fact that every ostensible
indication was to that effect, the fact that all the superior offi-
cers were Gulf & Ship Island officials, and lastly the presump-
tion that a railroad corporation authorized to build railroads,
and having a line built and which acquired right of way, was
the company actually building it and not a foreign corporation
whose very existence was not know to the public.

We are not without authority on this point, if, indeed, any
be needed. In *Solomon Railroad Co.* v. *Jones,* 30 Kan., 601,
a case strikingly like this as to the identification of the two com-
panies—a person hurt while working for the dummy contractor
—was held entitled to recover from the railroad company. As
the contract was not public and employes had no knowledge of
it, they were to be deemed the employes of the railroad com-
pany.

It is significant that while pay rolls and receipts of employes
were introduced to show that the entire force was working for
the construction company, the name Heflin did not appear on
any of them, and Mr. Marsh was not examined as a witness.

If Heflin is to be treated as employed by the Gulf & Ship
Island Railroad Company, then, as the negligence of the appel-
lant's acting engineer is not denied, plaintiff was entitled to
recover.

The appellant was within the operation of sec. 193 of the
constitution. If the substantial identity between it and the
railroad corporation is considered, it is, of course, within the
purview of the section. But, viewing it as a separate corpora-
tion, it is subject to the constitutional provision.

It will be noted that sec. 193 is not a part of any article or
chapter on railroads, or placed among sections dealing only with
railroads or common carriers. In two of the cases relied on by

appellant, where the meaning of railroad is limited to those operated as common carriers, the statute was being construed according to its collocation, and the rule *noscitur a sociis* applied. Section 193 is in the article on corporations and, hence, the section itself does not deal solely with railroad corporations. Its last provision, except one, saves existing remedies of employes of a corporation. The whole article shows that the constitution-makers were laying down rules that were to be as general as possible. The comprehensive nature of the article shows that no narrow sense is to be given to any section. The contention of appellants is that sec. 193 applies only to railroad companies in their capacity as common carriers, or, at least, because of their *quasi* public character. But the article, as a whole, and the various provisions of the section itself, negative such a conclusion. Only a few of the sections in the article deal with carriers, as such, and these are not collected together, but are placed indiscriminately among the sections on corporations generally. Sections 191, 192 and 194 deal with corporations as such, and the collocation, if to be looked to at all, shows that sec. 193 was not intended to be restricted to common carriers. There is not a single clause in sec. 193 that cannot apply equally as well, whether the railroad corporation be engaged as a common carrier or in the construction or repair of tracks. In limiting the section to railroad corporations the constitution-makers had in mind the peculiar risks to which employes are subjected in the operation of trains or the business peculiar to railroads. Bear in mind, we are not here discussing the act of 1898, extending sec. 193 to all corporations, of that, hereafter. We are seeking to get at the meaning of sec. 193. We will, for the present, assume that the act of 1898 is unconstitutional. If that be accepted, we assert that sec. 193 is saved from like condemnation only by reason of the fact that railroad corporations are a class selected and segregated because of the peculiar hazards of the business. It is only in that view that it can be sustained, as was stated in the *Ballard case.* The

brief of appellant in this case recognizes this, for it says: "The constitution, sec. 193, cannot be applied to all business in which employes of railroads engage without a palpable violation of the federal constitution." And again, "the *Ballard case* leads, we think, inevitably to the conclusion that the section of the constitution is inapplicable even to a railroad company engaged in constructing a new railroad." Why? we ask. Of course the answer of counsel would be because the classification has no reference to hazards. Counsel's suggestion that the public nature of the railroad's business is perhaps the basis of classification is not warranted by the opinion in the *Ballard case.* None of the authorities place the validity of such statutes on that distinction. If they did, then the section (193) would be open to objection, that it did not apply to all public corporations or all public carriers. When counsel for appellant says, "The section could not be applied to employes engaged in cutting away timber from the right of way, unless it be applied to laborers in the service of every farmer engaged in the same business," and when they deny its application to clerks, bookkeepers, etc., they confess that the only basis of classification that saves sec. 193 from conflict with the federal constitution is the hazard attending the operation of trains. Certainly, as pointed out in the *Ballard case,* this is one basis of classification that all courts admit to be valid. Whatever may be hereafter decided as to the right to classify, our court now sustains sec. 193 only because of the hazardous nature of the employment. This being conceded, let us see if the section was intended to apply, in a case like this, to appellant, and whether it could constitutionally be held to apply to it. Let us examine the facts: The injury occurred on a railroad; it was inflicted by a train of cars; the parties were handling railroad machinery; the train was on a railroad way; the sweeper was a railroad appliance; there were in the train unsafe cars; there was an engineer in charge of an engine; there were on the ground at the time superior agents and officers; and there were men in different depart-

ments of labor—some common section men, as plaintiff, and some in the mechanical department. All these features mentioned in sec. 193 were present. We challenge any one to name a single element of hazard that is wrought into sec. 193 that was not present when Heflin was hurt. Where can we find any phase to which the makers of the constitution could have looked in enacting the section that does not appear in the case? The train was the same kind of a train, and, in fact, the same train that was run over the finished track. The crew in charge of it sometimes ran it up to Mendenhall. The engine was a regular Gulf & Ship Island engine, and so marked. The cars were regular Gulf & Ship Island cars, and so marked. The crew consisted of a regular crew—engineer, foreman, conductor and flagman. The track was the same as that of the Gulf & Ship Island. In fact, there was no line or point of demarcation or division between the track of the Gulf & Ship Island and the construction company. The train ran into Pinola at night, and used the Gulf & Ship Island tracks at will. They recognized no difference of right or jurisdiction.

Again, the construction company was given the right by its charter to own railroads. Its contract with the Gulf & Ship Island gave it the right to run its trains over the ten miles between Mendenhall and Strong river, and the construction company agreed to run and operate its trains under the orders and regulations of the Gulf & Ship Island Railroad Company and under the direction and control of its officers. And the railroad company reserved the right to run over the uncompleted parts. And the two agreed to indemnify each other for accidents in the running of the trains. The work being done was the identical kind of work every railroad, whether an old one or a new one, is engaged in every day. The dirt train is used on all roads. The sweeper is used by all roads. In building switches, filling in trestles and surfacing tracks, the identical kind of train, of train force and appliances are everywhere on railroads in daily

use. The nature of the work and risk was, therefore, not peculiar to the construction company.

Let us then apply the test which counsel for appellants use and propound a similar query. Suppose this same crew, with the same train and appliances, had been doing the identical work for the Gulf & Ship Island a few miles north of Strong river; or, suppose now, they should do the same work, at the same place—would sec. 193 apply in one case and not in the other? If so, it would not be because the hazard·is different. How could the section be harmonized and upheld? Would it not be, in the one case, the railroad company being made liable because called a railroad company, and, in the other, exempted because called a construction company? Can the criterion of liability as between two corporations, both chartered to build and own railroads and both authorized to run trains, be that one is·named railroad and the other only construction company? Would this case be different if the charter of the appellant gave full powers to operate a railroad? Is liability, then, dependent on the nature of the work done and the risk incident thereto, or on the wording of the charter? If it depends on the wording of a charter, then cannot the legislature of any state give or take away the right to the equal protection of the laws by mere charter provisions? And if the whole matter can be controlled by charters, then cannot all corporations whose charters are amendable—and most all are now—be put in the class by a general statute? If this be so, then is not the true classification that of corporations and natural persons?

If the corporate name, instead of the actual employment and business of the corporation, is to be looked to in determining what kind of corporation is a railroad corporation under sec. 193 of the constitution, then we will have some strange results. A railroad, regularly chartered to build and operate a railroad and act as a common carrier would be liable in advance of the construction of its road if one of its office force or one of its surveying party should be negligently injured by a superior offi-

cer; yet, if the Morgan Steamship Company should lease the Gulf & Ship Island Railroad and operate it, and its freight train, by negligence of its engineer, killed a fireman, it would not be liable. If a foreign railroad corporation, contrary to our statute, should lease and operate a railroad here, it would not be liable, because, by its charter, it could not lawfully do so. If to be a common carrier is essential under sec. 193, and the injury must occur about the business of a common carrier, then the Gulf & Ship Island Railroad Company would not be liable if it was itself building this extension. The only answer to all this is that, looking to the intent of sec. 193 as well as to its language, it has regard to the business being done (not to the name of the corporation doing it) and to the hazard incurred.

Not only does reason require the construction that appellant is within sec. 193, but the authorities are almost unanimous in support of that view. We may say that there is not a single court which has held that the Employer's Liability Statute does not extend to a construction company, or other corporations operating railway trains, which does not base the decision on the language or provisions of a statute which obviously excludes such a view. *Daughty* v. *Fairbank,* 10 Q. B. Div., 358; *Cox* v. *Great Western R'y Co.,* 9 Q. B. Div., 106; *McKnight* v. *Iowa Construction Co.,* 43 Iowa, 406; *Schus* v. *Powers-Simpson Co.,* 89 N. W. Rep., 68; *Southern Ind. R. R. Co.* v. *Harrell,* 68 N. E. Rep., 262; *Kline* v. *Minnesota Iron Co.,* 100 N. W. Rep., 681; *Texas Central R. R. Co.* v. *Palfrey,* 80 S. W. Rep., 1036; *Houston, etc., R. R. Co.* v. *Jennings,* 81 S. W. Rep., 822; *Gulf, etc., R. R. Co.* v. *Howard,* 75 S. W. Rep., 803; *Williams* v. *Iowa Central R'y Co.,* 96 N. W. Rep., 774; *Stebbins* v. *Crooked Creek Co.,* 90 N. W. Rep., 355; *McKivergan* v. *Alexander Co.,* 102 N. W. Rep., 332; *Moran* v. *Eastern R. R. Co.,* 48 Minn., 46; *Savannah, etc., R. R. Co.* v. *Williams,* 61 L. R. A., 249; *Beeson* v. *Busenbush,* 44 Kan., 669; *Williams* v. *Northern Lumber Co.,* 113 Fed. Rep., 382; *B. & O. R. R. Co.* v. *Jones,* 95 U. S., 506; *Savannah, etc., R. R. Co.* v. *Phillips,* 90 Ga.,

829; *Cotting* v. *Goddard,* 182 U. S., 79; *Barber* v. *Connoly,* 113 U. S., 2; *Williams* v. *Fears,* 179 U. S., 270; *Missouri, etc., Co.* v. *Mackey,* 127 U. S., 205; *Gulf C. & S. R. R. Co.* v. *Ellis,* 165 U. S., 150; *Railroad Co.* v. *Moss,* 60 Miss., 641; *Louisville, etc., R. R. Co.* v. *Collins,* 2 Duval, 114.

Argued orally by *R. H. Thompson,* for the appellant, and by *George B. Power* and *C. H. Alexander,* for the appellee.

The case was afterwards remanded to the docket for a second oral argument, and was orally argued the second time by *R. H. Thompson,* for the appellant, and by *C. H. Alexander,* for the appellee.

Whitfield, C. J., delivered the opinion of the court.

The chief contention in this case is that the construction company was a railroad corporation, within sec. 193 of the constitution, in operating the train in question. The argument, broadly stated, is about this: That sec. 193 of the constitution of 1890 can only be upheld, as not violative of the constitution of the United States, upon the ground that the business of railroad corporations, in operating their trains, is inherently dangerous, and that this inherent danger furnishes the chief basis for distinguishing between the employes of railroad corporations and the employes of other corporations, the nature of whose business is not inherently dangerous; that this was the ground of the decision in the *Ballard case,* 81 Miss., 555 (s.c., 34 South. Rep., 533); 62 L. R. A., 407; 95 Am. St. Rep., 476; that the true intent and meaning of said sec. 193, looking to its spirit, and not to its letter, is that the words "railroad corporation" in that section should be made to embrace any person or any corporation, whether chartered as a railroad corporation or not, while it may be actually operating, at the time of any alleged injury, railroad trains; that we are not to look at the name of the corporation, or even at its charter,

as determinative as to whether such corporation falls within or without sec. 193 of the constitution, but that we are to look solely to the character of the employment, in which the employes of the corporation are engaged at the time of the injury, and that that is the determining feature, to wit, what the nature of the employment is, and not what the character or duties of the employer are, as set out in the charter of such employer; and that, if this is not the true test, then said sec. 193 violates the fourteenth amendment of the constitution of the United States, because under any other construction it would be made to apply to employes of railroad corporations whilst acting alone as common carriers of freight and passengers—that is, to railroad corporations, treated as commercial railroads, as the judicial phrase sometimes goes—and fails to protect the employes of other so-called railroad corporations, such as logging railroads, railroads used in connection with mines and lumber corporations, and various other enterprises.

It is said that a mining corporation, or a lumber corporation, which builds its own private railroad for use in connection with its lumber or coal business, is engaged in a railroad business as inherently dangerous, though it may be in a less degree, as a railroad corporation proper, a commercial railroad, and that, unless the employes of the former are protected by said sec. 193, said section is violative of the fourteenth amendment of the constitution of the United States. On this ground the counsel for the plaintiff assail said sec. 193, as interpreted in the *Ballard case,* as violative of the fourteenth amendment of the constitution of the United States for the reasons set out above. Curiously enough, the counsel for the railroad company also assail said sec. 193 as unconstitutional, in their reply to counsel for plaintiff, on the ground that the *Ballard case* did not go far enough, insisting that in the *Ballard case* the court ought to have held that the employes of railroad corporations meant the employes of railroad corporations while engaged as common carriers in trans-

portation of passengers or freight, and could never apply to such employes of railroad corporations proper, if only they should happen to be engaged in the construction of a new road, or in the transportation of coal or gravel from mines or pits owned or leased by such railroad corporation proper; and, further, counsel contend that the court, in the *Ballard case,* should go further and declare that the employes of railroad corporations engaged as common carriers in the transportation of freight and passengers meant only, in said sec. 193, such employes of such railroad corporations as were actually engaged, at the time of the injury, in the operation of the cars, in the running of the trains, etc., and not any such employes as were not so engaged—as, for example, telegraph operators, station agents, etc., or the employes of such railroad corporations engaged in the construction of any work not connected in any way with the actual operation of the railroad trains—and because the *Ballard case* did not do that, because the *Ballard case* did not go on beyond what was strictly in the case, and decide these two points altogether out of the case, the railroad counsel complain, and desire to have said sec. 193 declared violative of the fourteenth amendment of the United States constitution. In short, counsel for the railroad company are aggrieved because the court did not in the *Ballard case* go beyond the points of decision, and write *obiter dicta;* and counsel for plaintiff are aggrieved because the court in the *Ballard case,* also, did not write *obiter dicta* in expanding along their line of thought the opinion beyond anything called for by the case made by the facts. It would seem unnecessary to remind counsel so eminent as those engaged on both sides in this cause, that a court could scarcely do a more unwise thing than to go a step not required by the case made by the facts in any cause that may arise. Certainly it is the object of this court not to write *obiter dicta* in any case.

What, now, are the answers—addressing ourselves to the precise question here involved—to be made to the contention of counsel for the appellee that the Bradford Construction Com-

pany, in operating this train, was a railroad corporation, within the meaning of said sec. 193, for the reasons set out above? The pleadings in the case treat the Gulf & Ship Island Railroad Company and the Bradford Construction Company as separate corporations. They are so dealt with throughout the whole course of the trial in the court below. It appears that the Bradford Construction Company is a corporation chartered under the laws. of West Virginia. It is authorized to own a railroad. It is not authorized to operate one. An individual may own a railroad. Almost any sort of an association of persons may own a railroad, and may own it without operating it. Ownership of a railroad may exist for many purposes other than the transportation of freight and passengers. The ownership and operation of a railroad are things as wide apart as the poles. A careful consideration of the methods by which railroad corporations and construction companies are chartered by the laws of West Virginia will show that the methods are wholly distinct, and that the Bradford Construction Company was chartered in West Virginia as a construction company, and not as a railroad corporation, in any proper legal sense of the words. The well-known usual powers granted in charters for construction companies are wholly different from those usually granted to railroad corporations properly known as such—chartered as such. It is so exceedingly plain that the Bradford Construction Company is not a railroad corporation that that matter cannot be seriously discussed; and it must be stated that learned counsel for plaintiff do not so insist. They hesitate, of course, to claim that, as chartered, it is a railroad corporation; but their ingenious insistence is that in this particular case the Bradford Construction Company is, while operating the train in question, under the circumstances shown in the record, to be treated as if it were a railroad corporation, within the meaning of said sec. 193, or, to put it a little differently, their precise contention is, since, as they say, the Bradford Construction Company was doing work which was railroad work—precisely the same sort of work in all respects as to danger and other-

wise, which the Gulf & Ship Island Railroad would have done if it had been constructing this track—that therefore, looking to the nature of the employment, the dangerousness of the work being done by employes handling a train on the track, etc., the Bradford Construction Company is to be treated, in this instance, as if it were a railroad corporation.    If this test were adopted, undoubtedly every logging railroad, every railroad running to a mine, every railroad of whatever size or character, owned or operated by any sort of partnership, association of persons, or even by any private individual, would necessarily have to be held as a railroad corporation, within the meaning of said sec. 193, merely and only because the nature of the work done by its employes was of a like sort of dangerousness with that performed by the employes of railroad corporations proper.    No such contention can possibly be sustained by any true reasoning, regard being had to the history of our said sec. 193.    The argument is rather one for what the said sec. 193 of the constitution ought to have declared the law to be than what it did declare the law to be.

What is the plain and simple history of the adoption of this section?    We set it forth fully in the *Ballard case* as follows: "Sec. 193 of the constitution of 1890 was adopted after the decision of the United States supreme court in *Missouri R. R. Co.* v. *Mackey,* 127 U. S., 205 (8 Sup. Ct., 1161; 32 L. ed., 107), in 1888, and was manifestly intended to authorize legislation along the lines held constitutional in that case—that is to say, to abolish the fellow servant rule in the case of employes of railroad corporations whose business was known to be inherently dangerous—and the purpose of the last clause of sec. 193 was to extend the remedies therein provided for to any other class of employes of corporations or persons whose business was, like that of railroads, inherently dangerous, or whose business was so different from the business of other corporations or persons as to furnish the basis for a classification of the business of such corporations or persons, under which their employes might be permitted to sue without reference to the fellow servant rule, while

the employes of corporations or persons not having that sort of business could not so sue; in other words, to permit a classification based on 'some difference bearing a reasonable and just relation to the act in respect to which the classification is proposed.' *Ellis' case,* 165 U. S., 150 (17 Sup. Ct., 255; 41 L. ed., 666). The use of the word 'class' in the last clause of sec. 193 of the constitution of 1890 clearly indicates that it was not the purpose of the section to extend its provisions to all employes of all persons or corporations, but only to such employes of persons or corporations as operated businesses between which and the businesses of all other persons or corporations there exists some difference— some substantial difference—such as would be held a warrant for a classification conferring upon such employes of the first class, and denying to employes of the latter class, the benefits of sec. 193 of the constitution.    The thought was that a classification might be made, giving to the employes of some corporations and of some persons the right to recover, and denying it to the employes of all other corporations or persons, provided that classification was based upon some distinctive difference between the kinds of business conducted by the one set of corporations or individual employers and the others.   Section 193 was itself a special classification of railroad employes, based on the known hazardous character of the operation of railroad cars.    It was the direct product of the *Mackey case, supra.*    It is not, therefore, to be supposed that the last clause of the section meant any more than that there might be other classifications of the employes of corporations or individual persons, based also on some distinguishing difference in the nature of the businesses.   We do not understand the supreme court of the United Staes, in its many decisions on this subject, to mean that the dangerousness of a particular business would be the only basis for distinguishing between the businesses of corporations or individual employers in the classification, but rather that any substantial difference between particular businesses which would serve as a reasonable basis

for a classification, allowing the employes in the one case to recover, and in the other case not, is sufficient."

There never was a wiser building than the writing of this sec. 193. Few abler lawyers ever lived than had a hand in the drafting of that section. That great jurist and statesman, the late Senator George, is well known to have been its author. The purpose he, and those associated with him, in framing this section, had in mind, was not to provide, in a section in the organic law of the land, a remedy for all employes of all corporations, or of all persons, but to go slowly, surely, and safely, by providing only such remedy as the supreme court of the United States had already said might be provided without violating the fourteenth amendment of the constitution of the United States—to abrogate, as far as safely might be done, the absurdities of the fellow servant doctrine. They did not wish to be "hoisted by their own petard," by framing a section which would be wholly stricken down by that great court; for, knowing the decisions of that court up to that time, as we particularly pointed them out in the *Ballard case*, they knew that the United States supreme court had in the *Mackey case, supra,* sanctioned legislation giving to the employes of railroad corporations proper—such railroads as are sometimes known as "commercial railroads," engaged in the transportation of freight and passengers—remedies denied to such employes of other corporations. They knew that that classification had been vindicated upon the ground that the business of such corporations was inherently dangerous. They knew that they might, therefore, follow in the footsteps of the United States supreme court in going that far; and they went that far, for that reason; and they went no farther, for that very wise reason. And so, as we said in the *Ballard case*, if it be only correctly and carefully read, the whole scope and purpose and spirit of said sec. 193 of our constitution is to give the remedies therein given to the employes of railroad corporations proper, such as are engaged in the transportation of freight and passengers, and to such railroad corporations alone. It might be wise to extend

such remedies to the employes of any business, or any corpora-
tion, or any partnership, or any association of persons, owning
logging railroads, or lumber railroads, and the like; but all that
(so far as what was actually done by the constitution makers is
concerned) they left, and they expressly left, by the last clause
of the section, to be enacted or not enacted by the legislature as
the developments of the future might show to be wise and best.
They gave the legislature the fullest power to deal with all other
classes of corporations.     They limited the relief which they
granted within the bounds which we have indicated for the wise
reason which we have stated.     The relief they gave was very,
very great.     The instances in which injuries occur on logging or
lumber railroads and the like are as nothing in comparison with
the multitudinous instances in which injuries are daily happen-
ing to employes of railroads engaged in the transportation of
freight and passengers.     They were dealing with the great, para-
mount, supreme need of the situation.     They chose to make the
relief granted as to that supreme need safe, by making it stand
out, to itself, upon the basis of the distinction vindicated by the
supreme court of the United States.     They declined to imperil
that great relief by attempting to fill a section of the constitution
with the infinite details that would obtain in a thousand other
forms of relief, wise as it may be, in its time, but left to its time,
and to the legislature of its time.     That is what they intended,
and what we are to ascertain is just their intent, in what they
did; not what might have wisely been intended, but what in that
one section (193) they did intend.     There are many decisions
from other states supporting most abundantly our view as to
the true construction in this regard.     We cite a few of them
below: *Griggs* v. *Houston,* 104 U. S., 553 (26 L. ed., 840);
*Williams* v. *Northern Lumber Co.* (C. C.), 113 Fed. Rep., 385;
*McKivergan* v. *Lumber Company* (Wis.), 102 N. W. Rep., 332;
*Palangio* v. *Wild River Lumber Co.,* 86 Me., 315 (29 Atl. Rep.,
1087); *Beeson* v. *Busenbark,* 44 Kan., 673, 675 (25 Pac. Rep.,
48; 10 L. R. A., 839).

In the *McKivergan case* the facts and holding were these: "Rev. St. 1898, sec. 1816, which is a part of chapter 87, concerning railroads, makes every railroad company liable for damages sustained by employes caused by the negligence of other employes. Other provisions of the chapter relate exclusively to railroad corporations doing the usual business of a public or commercial railroad. Thus provision is made for equality of transportation rates, for the furnishing of cars on demand, for the maintenance of guards and fences, and for subservience to regulations for the shipment of grain, carrying of live stock, etc. The power of exercising the right of eminent domain is also given to railroads included within the purview of the chapter. Section 1861 defined the phrase 'railroad corporation' as embracing any company, corporation, or person, managing or operating a railroad, whether as owner, contractor, mortgagee, assignee, or receiver. Held, that sec. 1816, notwithstanding sec. 1861, embraces within its provisions only railroads engaged in a general railroad business for the carriage of passengers and freight, and has no application to a private railroad operated in connection with a logging and lumber business." And that case expressly repudiates the case of *Roe* v. *Winston,* 86 Minn., 77 (90 N. W. Rep., 122), which announces a contrary construction of the Wisconsin statute by the Minnesota supreme court.

In *Griggs* v. *Houston,* the supreme court of the United States held that a construction company was not a railroad company within the meaning of secs. 1166, 1167 of the code of Tennessee of 1858, visiting penalties upon a railroad company injuring any person or animal by reason of failing to observe precautions marked out by the statute. In *Williams* v. *Lumber Co.,* from the United States circuit court for Minnesota, whose state supreme court holds a contrary doctrine, it was held that sec. 2701 of the general statutes of Minnesota of 1894, providing that any railroad corporation owning or operating a railroad in Minnesota should be liable for all damages, etc., did not apply to a logging railroad built and operated for private purposes, and

not as a common carrier. We quote the observations of that court at page 385 to show that it would be immaterial whether there were any other railroad corporations in our state when said sec. 193 was adopted or not, if it be clear that it was not the intent of said sec. 193 to embrace any others. Undoubtedly, if there were others then in existence, such as logging and lumber railroads, the fact that they are not mentioned in said sec. 193 is the strongest kind of evidence that they were not intended to be included within its scope; on the contrary, if there were none in existence, then, it would still depend, as it seems to us, upon the fact as to whether the constitution makers, at the time they adopted the section, then intended to embrace such others within the scope of said section. The language of Justice LOCHREN is as follows: "It is said by counsel for defendant that it cannot apply to a railroad of this kind, because there was no such railroad in operation at the time of the passage of the act in 1887, and therefore it could not have been considered by the legislature. I do not know what the fact is as to that. My impression is that counsel is right as to the fact that there was no such railroad in operation at the time in this state; but I am not sure, and will not assume, whether that is the fact or not. The language in this statute indicates that it was not intended to include roads of this kind. But, if it were the fact that these railroads were in existence in the state, as they are now, then the presumption would be still stronger that they were not intended to be included in that act, for the reason that the language of the act would exclude them; and, if they were in operation, it must be presumed that the fact was known to the members of the legislature at that time. The fact that language was used that would ordinarily exclude would be stronger evidence that they were intended to be excluded than if there were no such railroads in operation at the time, and therefore they were not considered. I think it is true that an act may take effect upon business that was not carried on at the time when the act was passed, if the lan-

guage of the act is such that it will include that kind of business, although the same was not known at the time. But it seems to me that the language of this statute does not include railroads of this kind. Therefore I feel constrained to hold that the ordinary doctrine with respect to negligence on the part of the fellow servants applies in this case, and that such negligence is a part of the risk taken by the employe, and cannot be imputed to the employer."

In *Palangio* v. *Lumber Co.*, it was held that a railroad constructed and operated by a manufacturing corporation in its private business was not a railroad corporation within the meaning of sec. 141, ch. 51, of the revised statutes of Maine, which made railroad companies liable to pay laborers employed by contractors under certain conditions. The court said: "Surely it is impossible to regard such a corporation as a railroad company. It does not possess one of the distinguishing characteristics of a railroad company. True, the company has constructed a roadbed upon its own land, upon which it had placed sleepers and iron rails for the transportation of its own lumber from its own lands. But this no more makes it a railroad company, within the meaning of the law, than the construction of a camp in which to feed and lodge its laborers would make it a hotel company. An individual can lay a railroad track upon his own land for his own use, without obtaining a railroad charter, and without thereby making himself a railroad company; and so can a lumbering corporation.

The case of *Beeson* v. *Busenbark* is unanswerable, in our opinion, upon this particular proposition. In that case it was decided that a firm or partnership composed of private persons was not a railroad corporation within the meaning of sec. 1251 of the general statutes of 1889 of the state of Kansas. In this particular case the Kansas & Colorado Railroad Company engaged certain contractors to construct its road, which contractors sublet such construction to Beeson & Selden. Beeson & Selden were simply private persons constituting a partnership to con-

struct railroads, and they employed and paid the trainmen that operated a train on the railroad so constructed, and Busenbark was injured whilst cleaning an ashbox under the engine of one train; another train operated by Beeson & Selden being backed against it and causing the injury.    The contention was that Beeson & Selden were to be held as within the meaning of this act giving the employes of railroad companies remedies.    The court say: "The statute of 1874 is to be construed strictly.    It cannot apply to masters or employers not within its terms. Neither can it be construed to give protection to persons not in the employ of a railroad company.    The statute has reference to servants and employes of railroads, not to servants and employes of other masters, companies, or corporations.    The statute does not include partnerships, or persons in the employ of partnerships; it does not include construction companies, or persons in the employ of construction companies; it does not include bridge companies, or persons in the employ of bridge companies, although such partnerships and companies construct railroads, build bridges, and do other public work.    Statutes similar to the one referred to, changing the common-law rule between masters and servants, employers and employes, are in force in a number of the states of this country; but, with one exception, these statutes are all confined in their operation to railroad companies. The single exception, the Rhode Island statute, embraces only the cases of common-law carriers.    7 Am. & Eng. Ency. Law, 859; 24 Am. Law Rev. No. 2, 1890, p. 181.    The legislature has full authority to extend the operation of the statute to all corporations, companies, masters, or employers of every occupation or business.    It has not seen fit to do so.    It might very properly have extended the operation of the statute to all partnerships, masters, or others engaged in the work of operating trains upon railroads, or in constructing railroads, or other like work.    It has not done so.    In various opinions of this court we have frequently held that the statute applied to persons engaged in the hazardous work of operating trains upon a railroad; but

in all those cases we had reference to the employes of a railroad
company organized in this state or of a railroad company
doing business in this state.    *Railroad Co.* v. *Heley,* 25
Kan., 35; *Railroad Co.* v. *Mackey,* 33 Kan., 298 (6 Pac.
Rep., 291) ; *Bucklew* v. *Railway Co.* (Iowa), 21 N. W. Rep.,
103.    Again, we have held that when a railroad is being con-
structed, and is in the exclusive possession of, and operated by,
a contractor for its construction, and the railroad company, at
the time the injuries complained of are committed, has no con-
trol thereof, such company is not liable for the damages resulting
from the operation of such railroad.    *Railway Co.* v. *Fitzsim-*
*mons,* 18 Kan., 34; *Railroad Co.* v. *Willis,* 38 Kan., 330 (16
Pac., 728).    If the statute of 1874 were extended so as to include
the firm of Beeson & Selden and their employes, it must also be
extended so as to include every firm, partnership, contractor, or
private person having servants or employes at work on the track
or in the yard of a railroad company.      *Union Trust Co.* v.
*Thomason,* 25 Kan., 5; *Railroad Co.* v. *Harris,* 33 Kan., 416
(6 Pac. Rep., 571) ; *Railroad Co.* v. *Koehler,* 37 Kan., 463 (15
Pac. Rep., 567).    The statute does not go so far.    The courts
construe laws, but do not make them."

We have read, with great care, every authority cited by
learned counsel for appellee, and we shall notice the chief ones as
briefly as the limits of the opinion will allow.    The two English
cases referred to construe the English employer's liability act,
and were so decided manifestly because of the language of the
act.    MATHEW, J., in *Cox* v. *Great Western Railway Co.,* 9 Q.
B. D., 109, says: "The language of the act is that the plaintiff
can only recover against his employers where he has sustained
an injury 'by reason of the negligence of a person in the service
of the defendants who had the charge of any signal, points, loco-
motive engine, or train upon a railway.' "    In other words, that
act entitled one to recover for the negligence of any person who
had charge of a train upon a railway.    And so POLLOCK, B., in
*Doughty* v. *Firbank,* made the same construction in 10 Q. B. D.,

359.   The very reason given by him for holding that railways owned by colliery owners and others were railway companies within the meaning of the English act is "that the word 'employer' includes a body of persons corporate or unincorporated." Section 193 distinctly and expressly uses the language "railroad corporations."   The case of *McKnight* v. *Iowa Construction Co.*, 43 Iowa, 406, construes sec. 1307 of the code of Iowa of 1873, providing "that every corporation operating a railway shall be liable," etc.   It is true that the language in that case squarely sustains counsel for plaintiff; but we think the opinion is unsound on the ground on which it goes, but that the decision is right, and should be rested on the ground that the language "every corporation operating a railway" embraces a railroad corporation or any other corporation operating a railway.

Railroad Co. v. *Phillips,* 90 Ga., 829 (17 S. E. Rep., 82), is no authority for the position of appellee, but might furnish some sort of authority for holding the Gulf & Ship Island Railroad Company liable on the facts in this case.   The case of *Union Pac. R. R. Co.* v. *De Busk,* decided by the Colorado supreme court and reported in 20 Pac. Rep., 752 (3 L. R. A., 350; 13 Am. St. Rep., 221), is to our mind a thoroughly unsatisfactory opinion in every respect.   We decline to approve any of its reasoning, or its conclusion.   In that case the court absolutely held that the phrase "railroad corporations" should embrace "any body, company, or association or persons, whether technically incorporated or not, engaged in the operation of railroads," and apologizes for its construction of these words by saying they did so "to avoid the necessity of declaring the act unconstitutional as violating the fourteenth amendment."   This objection, which, by the way, runs through nearly all the cases taking the view of the Minnesota supreme court, is not tenable.   It is well said by the supreme court of Missouri in *Humes* v. *Mo. Pac. Ry. Co.,* 82 Mo., 221 (52 Am. St. Rep., 369), in meeting this objection: "It is further alleged against this statute that it is partial and special because it 'is directed against railroads alone, while no

other common carriers are brought within its operation.' Had
the legislature deemed it essential to the protection of human life
and private property, they would doubtless have extended the
statute to carriers by coach and water.    But as the class of prop-
erty and human life protected by this provision of the statute is
not exposed to a like peril incident to coach and water travel, the.
occasion and necessity for so extending the statute does not exist.
Class legislation is not necessarily obnoxious to the constitution.
It is a settled construction of similar constitutional provisions
that a legislative act which applies to and embraces all persons
'who are or who may come into like situations and circumstances'
is not partial." It is enough if the legislature or a constitution
shall deal with all in the same class alike.    The constitution
makers had the perfect right to select railroad corporations
proper, engaged in the transportation of passengers and freight,
if it had chosen to do so, without embracing logging railroads,
lumber railroads, and the like, although the inherent danger of
the business might be the same in the business of all such corpo-
rations, if only they embraced all railroad corporations proper
in their classification.    It was not for a logging railroad com-
pany or a lumber railroad company to say sec. 193 of the consti-
tution violated the fourteenth amendment, if said section ex-
tended the protection of the law equally to all railroads of the
classes named, railroads proper, engaged in the business of com-
mon carriers.    They constitute a class to themselves, and, if all
in that class were similarly dealt with, it was immaterial whether
the Constitution went further and embraced logging railroads
and lumber railroads, which were not in that class.    It is too
clear for argument that the fear expressed in so many cases that
the employer's liability acts would be declared unconstitutional
by the supreme court of the United States, unless they embraced
within their scope the employes of all corporations of every kind
whose business is inherently dangerous, like that of railroad cor-
porations proper, is wholly unwarranted.    The legislature may
select any class of corporations it pleases, leaving out other and

different classes, provided, only, that the employes of the class dealt with are all treated alike.    They may select railroad corporations proper, and give to their employes certain remedies based on the inherent danger of such railroad business, and leave out logging railroads and lumber railroads and the like, although their business may be to some extent as inherently dangerous as the business of the latter.    What is it to them, if only all railroad corporations proper are dealt with alike?

*Union Trust Co.* v. *Kendall,* 20 Kan., 515, holds simply that the Union Trust Company, in its capacity as trustee of the railroad, was within the statute providing that every railway company or corporation in the state, and every assignee or lessee of such corporation, should be liable, etc.    *Rouse* v. *Harvey,* 55 Kan., 589 (40 Pac. Rep., 1007), likewise holds that a receiver is within a similar statute.    *Wall* v. *Platt,* 169 Mass., 398 (48 N. E. Rep., 270), also holds that receivers are within the language of the Massachusetts act providing that every railroad corporation shall be responsible, etc. *Farrell* v. *Union Trust Co.,* 77 Mo., 475, also holds that a trustee of a railroad is within the provisions of such statute.    *Sloan* v. *Cent. Iowa R. R. Co.,* 62 Iowa, 728 (16 N. W. Rep., 331), also holds that a receiver is within such a statute; that statute, however, saying "persons owning or operating railways" should be liable, and the court held that the receiver was a person operating a railway within the meaning of that section.    The truth is that there is a good deal of confused writing as to the liability of receivers, trustees, etc., of railroad corporations, within the meaning of the various employer's liability acts.    The reason at the core of all such liability is that the real defendant in every such case is the railroad corporation, and not the receiver.    When that distinguishing feature is clearly held in view, there is no difficulty in the decision of any of these cases.    The matter was put on its proper ground by the supreme court of the United States in *McNulta* v. *Lockridge,* 141 U. S., 327 (12 Sup. Ct., 11; 35 L. ed., 796), where the court say: "We agree with the supreme court of Illinois that it

was not intended by the word 'his' to limit the right to sue to cases where the cause of action arose from the conduct of the receiver himself or his agents, but that, with respect to the question of liability, he stands in place of the corporation. His position is somewhat analogous to that of a corporation sole, with respect to which it is held by the authorities that actions will lie by and against the actual incumbents of such corporations for causes of action accruing under their predecessors in office. . . . Actions against the receiver are in law actions against the receivership, or the funds in the hands of the receiver, and his contracts, misfeasances, negligences, and liabilities are official, and not personal, and judgments against him as receiver are payable only from the funds in his hands." In *Pierce* v. *Van Dusen,* 47 U. S. App., 339 (78 Fed. Rep., 693; 24 C. C. A., 280), that great jurist, Mr. Justice HARLAN, said: "If the reasoning of the Georgia and Texas courts be applied to the Ohio statute, it cannot be held to embrace the employes acting under the receiver of a railroad corporation; but in our judgment the statute is applicable to actions against receivers of railroad corporations. To hold otherwise would be to subordinate the reason of the law altogether to its letter." 'As said by Mr. Justice VALLIANT in *Powell* v. *Sherwood,* 162 Mo., 605 (63 S. W. Rep., 485), in a masterly opinion: "The receivership is *pro hac vice* the corporation itself, under the management of one man, instead of that of a board of directors." In that very case the receiver was held embraced by the law of 1897, which act, however, defines railroad corporations to mean "all corporations, companies or individuals owning or operating a railroad." The same reason why receivers and trustees are held within the meaning of these employer's liability acts is also set out in *Farrell* v. *Union Trust Co.,* 77 Mo., 477, as follows: "It was not expressly decided that the receiver would be, but we see no reason why he should not be, liable. He stands in the place of the company, represents the company, and while not directly, the railroad company is ultimately responsible, because dam-

ages recovered against the receiver in such a case he may charge to the company in his settlement." In *Rouse* v. *Harry,* 55 Kan., 598; 40 Pac. Rep., 1010, it is said, amongst other things: "A suit against a receiver is in form against an individual, but in substance it is against the property in his charge." It may be remarked, by the way, that in this very authority relied on by counsel for appellee it is said: "The distinction between contractors employed in the construction of a railroad and a railroad company is broad and well marked."

We have reviewed these leading authorities cited by the learned counsel for appellee to sustain their proposition that the Bradford Construction Company is to be treated, whilst operating this train, as a railroad corporation, within the purview of said sec. 193, and we think that we have demonstrated that each case cited was upon employer's liability acts materially different from sec. 193 of our constitution, or that they are, in the two or three instances pointed out, wrongly decided, or decided rightly for wrong reasons. We are clearly of the opinion that said sec. 193 of our constitution applies to railroad corporations proper, which are engaged in the business of common carriers transporting freight and passengers, and not to logging railroads and lumber railroads and the like, owned or operated by individuals, corporations, or partnerships, as adjuncts to their main business. We leave undecided, for the present, the question whether, granting that the railroad corporation involved in the particular case is a railroad corporation proper, engaged as a common carrier in transporting freight and passengers, it would not be liable, under said sec. 193, to its employes, if at the time of the injury it were engaged in constructing some new railroad or branch railroad, or in hauling coal and gravel and the like from mines and pits. We decline to anticipate anything. We decide only the case before us, but we refer, as shedding light on this question, to *Gulf Railroad Co.* v. *Howard* (Texas Civ. App.) 75 S. W. Rep., 803, where the court held that a somewhat similar provision

applied to employes operating cars in round houses, coal chutes, etc. This last proposition is entirely distinct from the proposition which we think it is proper to decide in this case, and that is that said sec. 193 of the constitution applies to the employes of railroad corporations proper, engaged as common carriers in the transportation of freight and passengers, and to such employes only when injured whilst doing work in some manner connected with the use and operation of the railroad. This latter proposition has been expressly decided in *Luce* v. *Chicago, etc., R. R. Co.,* 67 Iowa, 75 (24 N. W. Rep., 600, the court holding that "one employed in a railroad coalhouse, and injured by the negligence of a co-employe whilst loading coal upon a car, cannot recover from the company, because the injury in such connection is not in any manner known as the use and operation of a railroad;" and also in *Blomquist* v. *Railway Co.,* 65 Minn., 69 (67 N. W. Rep., 804), in which the court said: "In order to sustain the law, we have, by judicial construction, limited its operation to those employes of railroads who are exposed to the peculiar dangers attending the operation of railroads, or what are, for brevity, called 'railroad dangers.'"

It manifestly never was the purpose of the constitution-makers in said sec. 193 to give to all employes of railroad corporations the remedies therein provided. They meant such employes as were imperiled by the hazardous nature of the business of operating railroad trains. The very ground upon which the United States supreme court all along held that such legislation was constitutional was that the nature of the business of operating railroad cars is inherently dangerous. It would be absurd to hold that there was any inherent danger in discharging the duties of ticket agent, or telegraph dispatcher, or many other officers in which employes of railroads are at work. It would be equally absurd to hold that employes of a railroad corporation engaged in the construction of a round house, or in any other work not at all connected with the oper-

ation of the cars, were engaged in work inherently dangerous. They would be in no more danger than any other like employe of any other master. In short, the reason which sustains said sec. 193 of the constitution being the inherent danger attending the actual operation of railroad trains, the remedy must be limited to those employes whom such danger imperils.

So far as the first contention of counsel for appellee is concerned, it is sufficient to say that it is without real merit. The Gulf & Ship Island Railroad is out of the case by the judgment of the court below, unappealed from, and the evidence in the case shows that Heflin was the servant of the construction company.

And, so far as the contention that the *Ballard case* is unsound, it is sufficient to remark, first, that that case was considered for two years by this court; second, that it was argued four times orally; third, that it received the concurrence of five of the judges of this court; fourth, that every argument that has been advanced now to show that the mere fact of incorporation was a defense was earnestly pressed in the argument of the *Ballard case;* fifth, that that case has stood as the law of the land for some years without question. It is simply waste of time to ask this court to overrule a case so thoroughly and patiently considered, and which has been so long established as the law of the land.

The fourth and last contention of appellee is that Heflin was not a fellow servant of the engineer, even at the common law. We have carefully considered the cases cited under this head, but we find ourselves constrained by the decisions of this court in the past, which all know went to the utmost verge in extending the fellow servant doctrine, to hold that Heflin must be regarded as such fellow servant, even if regard be had to the fact that at the very moment of the injury he was not shoveling dirt from the rails, but assisting in replacing the appliance which had become misplaced on the flat car.

It follows, from these views, that the judgment below should have been for the appellant.

Reversed and remanded.